## Govan vs. Moore.

Surety: *Discharged by the marriage of the principal debtor with the payee of the note.*

A. with others as his sureties, executed a note to B, a *femme sole*, and afterwards A and B intermarried. Under the provisions of an ante-nuptial contract between them, the note did not pass to A upon the marriage, but remained the separate property of B. *Held:* That upon the marriage, the wife lost her remedy by action against the husband, and the sureties were thereby discharged.

APPEAL from *Phillips* Circuit Court.

Hon. J. N. Cypert, Circuit Judge.

*Adams*, for appellant.

Cited as conclusive, *Dobbins* v. *Oswalt*, 20 Ark., 619–624; *Oswalt* v. *Moore*, 19 Ark., 257–262; *Dobbins* v. *Hubbard*, 17 Ark., 189–198; also act of 1873.

Govan vs. Moore.

The wife's rights in this case are separate and distinct from her husband's—not affected by the marital relation. Shoular, pp. 232–33 and cases cited, p. 238 and cases cited; *Gee* v. *Lewis*, 20 Ind., 149.

*Tappan & Hornor*, for appellee.

Marriage releases the debt. Bright on Hus. and Wife, vol. 1, p. 18. Presumption of law in favor of husband's marital right. *Saddler* v. *Bean*, 15 Ark., 202.

The debt not mentioned in the marriage contract, cannot have been intended in the general word "property," and the right to sue upon it was lost by marriage.

WALKER, J.:

The facts of the case as presented by the record are, that on 19th of February, 1866, William H. Govan, I. I. Govan and William E. Moore executed their writing obligatory to Mrs. Ann Ward, by which they promised, on or before the first of January, 1867, to pay her $9,734.75 with interest at ten per cent.

On the 29th of October, 1866, William H. Govan, one of the makers and principal in the note, in contemplation of marriage with Ann Ward (to whom the note was payable) entered into a marriage contract with her, in which, after reciting that the parties contemplated marriage, and desired to reserve to themselves rights and privileges, which they could not enjoy unless reserved before marriage, agreed: "That the property which each may hold now, or at any time hereafter, shall be held and enjoyed by each, and to be disposed of by the said parties respectively, by will, or devise, without molestation or hindrance on the part of each other. And in no event shall the property of either, at any time hereafter, become responsible for the debts now contracted, or which may be hereafter contracted by the said parties respectively; but, that the property of each shall alone be responsible for the debts that the one or the other may

now owe, or such as they may individually hereafter contract, each of them hereby retaining the power to contract in respect to the separate property now owned, or which may hereafter be owned, by each in his or her own right."

This is as much of the agreement as has a bearing upon the question at issue.

The agreement was soon thereafter probated and duly admitted to record.

Afterwards, on the first day of November, the parties were married, and at the January term of the Circuit Court of Phillips county, Mrs. Ann Govan brought her suit on the note against the defendant, William E. Moore.

To this action defendant made several answers, only one of which need be noticed. The answer upon which the questions of law arise, is, in substance: That defendant executed the note as security for William H. Govan. That after the execution of the same, said Govan married Ann Ward, to whom the note was made payable, who is the plaintiff in this suit. That she and Govan are still husband and wife.

To this paragraph of the defendant's answer, the plaintiff in substance replied, setting up her right to this debt as her separate property, under the marriage agreement, that the note at the time the agreement was entered into was part of the property then owned by her.

To this reply the defendant demurred, the demurrer was sustained and final judgment rendered for defendant, from which plaintiff has appealed.

The questions of law to be considered arise upon the sufficiency of this reply.

It will be observed that whilst the terms of the agreement are clear and definite as regards the respective rights of the parties to retain the property then owned, or thereafter to be acquired,

as their separate property, to be conveyed or disposed of at the pleasure of each, and to be alone responsible for debts then, or thereafter contracted by the respective parties, it makes no reference whatever to the amount, value, or description of the property which either of them owned at the time the agreement was entered into. That Mrs. Ward, at that time, held the note in suit against her intended husband and his securities, is evident, but no reference is made to it, or to any debts or choses in action, or to their collection.

If this note was intended to be included, it must have been under the term property. The separation of the property, its separate use and enjoyment, and the liabilities for which alone it should be held responsible, seem to have been the leading purpose of making the agreement. There are no terms of exception or restriction used, and it is perhaps more consistent with the true spirit and intent of the parties, to hold that the term property was intended to include debts as well as lands and chattels.

If the rights of purchasers, or those who had subsequently acquired an interest in the property of the wife, or a charge upon it, was at issue, a question might arise as to the necessity of giving such a description of the property intended to be reserved to the parties and held as their separate estate, as to identify it, but in this instance, the liability of the defendant is simply to pay upon a contract with the wife, entered into before marriage, and not to charge her estate.

Giving to the ante-nuptial contract its full effect, and conceding that the debt due to the plaintiff from her husband, and the defendant, his surety, did not by force of the marriage, vest in the husband, as at the common law it would have done, but remained the separate property of the wife, it still leaves the question to be settled as to the effect which the marriage had

upon the marital rights of the parties, and the remedies afforded for the enforcement of the contract.

It is settled, upon undoubted authority, that marriage is, at law, a release of all contracts existing between the parties contracting in marriage, which existed at the time it was consummated. A man cannot sue his wife, nor a woman her husband, in any form of action. Cord on Married Women, sec. 1019. In contemplation of law they are considered one person. But, giving effect to the ante-nuptial contract, as we must, to the extent that the title to the wife's personal property, including this debt, did not pass to the husband upon the marriage, but remained in her, as her separate property, we are not prepared to say that it so changed the common law rule as to allow the wife to sue her husband upon this debt, and take judgment against him for its satisfaction. The familiar rule, which upholds a right of action in the party who is vested with legal title, should not, we think, be applied to this state of case. At the common law the husband and wife are held to be one; the rights of the wife are, to a great extent, by marriage merged in the husband. To allow the one to litigate with the other, would tend to disturb the nuptial relations, which are intended to be sacredly preserved. In the language of Mr. Cord: "A man cannot sue his wife, nor a woman her husband."

The attempt of the wife to sue would lead to absurd consequences. Conceding the note to be the wife's, a debt contracted before marriage, in order to sue for it she must join her husband in the action, and thus the principal debtor would become plaintiff in an action against his security, to enforce from the security the payment of a debt, which, if collected, the security would instantly have his right of action to recover back from him. This could not be done. It necessarily follows, that the right of recovery by force of the marriage was lost. The ante-nuptial

contract could make no such innovations in the relations of husband and wife, as was expressly held by this court in the case of *Harrison* v. *Trader and wife*, 27 Ark., 288.

In that case the effect of an ante-nuptial contract was the subject of consideration. The question presented was, whether the parties could, by a contract made in contemplation of marriage, discharge the husband from his common law liability to pay the debts of his wife contracted before marriage, and it was held that such could not be its effect. When considering this question, Mr. Justice BENNETT, who delivered the opinion of the court, said : " While, as between husband and wife, the contracts entered into between themselves before marriage in reference to the property of one another, by means of which they may change and control the general rules of their nuptial state, may be held good, they cannot change or vary the terms of the conjugal relation itself; nor can they add to or take from the personal rights or duties of the husband and wife." Citing as authority, Bos. and Pul., n. *a*, 148, in which it is said . "A contract, no matter how solemnly entered into, between a man and a woman, that would attempt to, or has for its object the contravention of the general policy of the law in settling the relations of domestic life, and which creditors, third persons and the public, are interested to preserve, is invalid."

In the case of *Marshall* v. *Mary Ruttan*, 8 Term. Rep., 547, Lord Chief Justice Kenyon said : "How can it be in the power of any persons, by their private agreements, to alter the character and conditions which by law result from the state of marriage, while it subsists, and from thence to infer rights of action, and legal responsibilities, as consequences flowing from such alteration of character and condition; or, how can any power, short of that of the Legislature, change that, which, by the common law of the land, is established ?"

Govan vs. Moore.

We do not understand these authorities as questioning the right of the parties to make any contract they may choose, in anticipation of marriage, for the protection of their property, or their right of control over it, but it does deny the power by such contract to interfere with the marital right, so as to disturb the repose essential to its full enjoyment, or to perform a duty enjoined, even, as we held in *Harrison* v. *Trader and wife,* to compel the husband to pay the debts contracted by the wife before marriage. Nor are we to be understood as holding that in suits in equity, in view of the relations of husband and wife, and the nature of the contract entered into by them, the rule might not, to some extent, be different.

But in an action at the common law, such as the one under consideration, in which the effect of the marriage was to deny to the plaintiff the right of action against her husband, the rule is different.

This change deprived the surety of the right, under the statute to compel the creditor to sue the principal debtor after thirty days' notice. By her marriage she had placed it out of her power to sue the debtor, her husband, there ceased to be a necessity for notice to sue, because, if given, she had lost the power to sue, the surety had a right to compel her to sue the principal debtor, or, on failure to do so, discharge him, and, when she placed it out of her power to do this, the discharge of the surety was complete. Mr. Parsons, in his work on contracts, page 17, says: "Any material change in the relations between the principal and the party to whom he owes the debt, or duty, discharges the surety. Nor can the surety, in such case, be held to show that the change was injurious to him." At page 18 the same writer says: "Anything which operates as a novation discharges the surety."

In the case of *Mayhew* v. *Boyd,* 5 Md., 102, it was held that "any dealings with the principal debtor by the creditor, which

*Vol. xxx.—43.*

amounted to a departure from the contract by which the surety is bound, and which, *by possibility, might* materially vary or enlarge the latter's liability, without his assent, discharges the surety."

We are satisfied that the plaintiff in this case did, by her marriage with her principal debtor, so change the relations which existed between them at the time the contract was made, as most materially to affect the liabilities of the surety, the defendant, by reason of which he was discharged.

The demurrer to the plaintiff's replication was properly sustained.

Let the judgment be affirmed.

ENGLISH, CH. J., dissenting:

Being unable to concur with my brother judges in the conclusion which they have reached in this case, I will briefly express the grounds of my dissent.

But for the ante-nuptial contract entered into between Mrs. Govan and her husband, the principal in the writing sued on, the debt would have been extinguished as to him by their marriage, and he being discharged by her voluntary act of entering into the marriage, the sureties would also have been released.

But, by virtue of the ante-nuptial contract, the obligation remained her separate property after the marriage, the debt was not extinguished thereby, nor the husband, nor, of course, the sureties released from the obligation, but it continued to be valid and binding against principal and sureties in her hands. Otherwise, the reservation in the ante-nuptial contract in her favor was worthless as to the obligation in question.

The effect of the marriage was merely to suspend the wife's right of action against her husband upon the obligation, in the court of law, and transfer it to the court of equity.

In other words, the effect of the marriage was not to impair the obligation of the contract, nor to destroy the wife's right of action upon it against her husband, but merely to shift the forum in which the remedy was to be asserted. *Burleigh* v. *Coffin*, N. H. (2 Foster) 118; *Power* v. *Lester*, 17 Howard (N. Y.), 413; *Boatright* v. *Wingate et al.*, 2 Constitutional (S. C.) Rep., 521.

But the bond being preserved to the wife as her separate property by the ante-nuptial contract, the statute gave her the right to sue any of the obligors, other than her husband, upon it, in her own name in the court of law. Gantt's Digest, secs. 4487, 4194.

Moore, the appellee, one of the makers of the bond, has no cause to complain that she sued him only. This she could have done if she had never married Govan, for the bond being upon its face joint and several, she had the right before the marriage to sue all or any of the makers. As between them and her, they were all principals, and severally, as well as jointly, liable. As between Govan (who became her husband) and the other makers of the bond, the relation of principal and sureties existed (though this did not appear on the face of the obligation), but she was not bound to sue the principal before or after the marriage, unless notified by the sureties to do so under the statute. Gantt's Digest, sec. 5696.

Whether the sureties ever gave her any notice to sue her husband or not does not appear in this case. But suppose they had given her notice to sue, she could have brought her suit on the chancery side of the court below upon the bond, against her husband and the other obligors, and obtained a decree against all of them for the debt, and the husband, as between him and the sureties, being primarily bound to pay the debt, the court could have directed the decree to be satisfied by execution against his property, if he had any, and prevented the wife from resorting to the property of the sureties for satisfaction until the effects of

the husband were exhausted. And if he had no property, the court could have directed the matter of contribution as between the sureties. And thus the suit in chancery could have been made more protective and convenient to the sureties than a suit at law would have been on such notice, had the marriage not taken place, and the sureties would have obtained all the benefit intended to be conferred upon them by the statute, and its purpose would have been substantially accomplished.

Moreover, suppose the court below had rendered judgment in this suit in favor of the appellant against the appellee, and he had paid the debt, he could have sued the husband (his principal) for the amount, or moved for judgment against him in the same court, under the statute (Gantt's Digest, p. 1001–2), just the same as if the appellant had never married the principal, and forced the appellee to pay the debt.

Again, when the appellee was sued alone at law, in this case, he might, perhaps, by proper pleading, have had the cause transferred to the equity side of the court, made the husband and the co-securities parties, and procured a decree to be rendered to enforce the primary liability of the husband, etc., as above indicated. *Rees* v. *Berrington,* 3 leading cases in equity (Hare and Wallace), 547; *Hempstead et al.* v. *Watkins, adm'r.,* 6 Ark., 354.

I cannot see how the marriage of the appellant with the principal debtor worked any substantial prejudice to the rights of the appellee as a surety, and, with all due deference to the opinion of my brother judges, think the judgment of the court below should be reversed.