## WILLIAM E. MAYHEW vs. WILLIAM BOYD.

An endorsement of three notes was made, in consideration of the execution, at the same time by the maker to the holder of a mortgage, by the terms of which the mortgagee was to sell the property only on default of the

maker to pay the notes at their maturity. When the first note was due it was dishonored, but by the assent of all parties a new one was substituted in its place. The mortgagee, *after* the original, but *before* the new note or any of the others matured, sold the property with the assent of the mortgagor, but not of the endorser, applied the proceeds to pay the two first notes without protesting them, and sued the endorser upon the third. Held:

That the right to sell, which accrued upon the dishonor of the first note, was taken from the mortgagee by the substitution of the new one in its place, and the sale before the maturity of the latter was a violation of the contract between the parties and discharged the endorser.

Any dealings with the principal debtor by the creditor which amount to a departure from the contract by which a surety is to be bound, and which, *by possibility*, *might* materially vary or enlarge the latter's liability without his assent, discharges the surety.

Appeal from Baltimore County Court.

*Assumpsit* by the appellant, as holder, against the appellee, as endorser, of a promissory note for $900, drawn by one W. B. Pyfer, in favor of one Robert Close, dated October 25th, 1848, and payable in one year after date. Plea *non-assumpsit.*

*Exception.* The making, endorsement and protest of the note, and due notice thereof to the defendant were admitted. The defendant then offered in evidence a mortgage executed by Pyfer, the maker of the note, to Mayhew, the plaintiff, of certain household furniture in a hotel in Baltimore city. This mortgage bears the same date as the note, and recites Pyfer's indebtedness to Mayhew for $2089.23, for which he had given three notes of the same date with the mortgage, one payable to Boyd and the other two to Close, and endorsed by Boyd and Close, one for $900, at *one year*, (being the one in suit,) another for $594.61, at *six months*, and the other for $594.62, at *four months*. The *condition* was, that if Pyfer should pay to Mayhew the said sum of $2089.23 "according to the tenor and effect of said notes," the mortgage should be void; otherwise, Mayhew might sell the mortgaged property and apply the proceeds to the payment thereof and the balance to the mortgagor.

When the note for $594.62, at four months, became due it was protested and due notice given to the endorsers; and shortly afterwards another note for $614.39, dated 8th of

March 1849, was made by Pyfer, payable at forty days, to Close, and endorsed by him and Boyd, by way of renewal of the protested note, including the principal, interest and costs of protest of the original note, and the interest for the time the new note had to run, which was delivered by Close to Mayhew, who thereupon delivered to him the said original note. It was further in proof, that on the 8th of April 1849, *after* the original but *before* the new note or either of the others mentioned in the mortgage became due, by the consent of the mortgagor and the authority of the mortgagee, the mortgaged property was sold and the proceeds paid over to Mayhew, who applied them to the notes as they fell due. The fund was more than sufficient to pay the two first falling due, which were not demanded of Pyfer nor protested, nor any notice given to the endorsers of their payment or non-payment. The sale was fairly made; and it was proved that Pyfer's house was well furnished in the summer of 1849, and that he went to California in June 1849, taking with him property or merchandise to the amount of $400 or $500, and died there in 1850. It was further proved, that Close and Boyd endorsed said notes at the request of Pyfer; and when they called on Mayhew and proposed to become endorsers on said notes mentioned in the mortgage, it was understood and agreed that Pyfer would execute said mortgage. Upon the whole evidence the plaintiff offered three prayers, in substance as follows:-

1st. This prayer, after leaving to the jury to find the sale of the mortgaged property by the mutual consent of Pyfer and Mayhew, and payment over of the proceeds to the latter by the former on account of the indebtedness mentioned in the mortgage before the notes for $614.39 and $594.61 became due, asserts Mayhew's right to apply the same to pay said notes without any demand on Pyfer or giving any notice to the endorsers of their payment or non-payment; provided the first was a renewal of one of the original notes which was not otherwise paid, and that he was not bound to credit the note in suit with any more of said proceeds than may remain after paying those two.

2nd. This prayer leaves to the jury to find the making, endorsement and protest of the note in suit, that Mayhew fairly applied the proceeds of sale to pay the notes secured by the mortgage, that the sale was fair and with the consent of the mortgagor, and such application left only a balance of the last note due, (the one sued on,) and then asserts that Mayhew was under no legal obligation to protest the two former notes in order to hold Boyd liable on the one in suit.

3rd. This asserts that if the jury find that no actual loss or damage was sustained by Boyd from the sale of the mortgaged property and application of the proceeds as above stated, then the facts of the sale being made before the time limited for it in the mortgage and without the consent of Boyd are not sufficient of themselves entirely to bar the plaintiff's right to recover in this action.

The defendant then asked an instruction, that if the jury find the making and endorsement by Close and Boyd of the notes as mentioned in the mortgage; that Pyfer executed said mortgage to secure their payment; that the note for $594.62 was paid and settled by another for $614.39, drawn by Pyfer and endorsed by Close and Boyd; that Mayhew, before said notes or either of them became due, sold the mortgaged property without the consent of Close and Boyd or either of them; that the notes for $614.39 and $594.61 were not protested for non-payment, and Close and Boyd did not receive, and Mayhew made no effort to give them, any notice of their non-payment; that Pyfer, at the time the two last mentioned notes became due, was in such circumstances that Close and Boyd could or might have recovered their amount from him; that the proceeds of said sale amounted to more than the note sued on with interest and were received by Mayhew, then he is not entitled to recover.

The court, (FRICK, C. J. and LE GRAND, A. J.,) rejected the plaintiff's prayers and granted that of the defendant. To this ruling the plaintiff excepted, and the verdict and judgment being against him appealed.

14      v. 5

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Edward Otis Hinkley* for the appellant argued at length the following points:

1. A right to sell the mortgaged property accrued to Mayhew, the mortgagee, upon the non-payment by Pyfer, the mortgagor, of the note for $594.62 at its maturity, on the 28th of February 1849. 6 *G. & J.*, 72, 74, *Jamieson vs. Bruce*. 1 *Md. Ch. Decisions*, 92, *Brown vs. Stewart*. 3 *Bland*, 125, 178, 179, *Salmon vs. Clagett*, and the same case in the Court of Appeals, 5 *G. & J.*, 315.

2. The renewal of that note, on the 8th of March following, by a note for $614.39, at forty days, made and endorsed by the same parties without any new consideration or express covenant, did not extinguish nor impair, nor even suspend the said right of sale. The only effect it could have, if any, was to postpone the right of a personal action at law upon the original or new note until the maturity of the latter. The mortgage was a distinct security, and the right of sale a right *in rem*. *Theobald on Principal and Surety*, 191, (1 *Law Lib*, 113, 115.) 1 *Bland*, 236, 282, *Lingan vs. Henderson*. 1 *Zabriskie's Rep.*, 634, *Pintard vs. Davis*. 8 *Blackf.*, 190, *Carr vs. Howard*. 6 *How.*, 279, *United States vs. Hodge, et al*. 2 *Bland*, 663 to 669, *Andrews vs. Scotton*. 13 *Illinois Rep.*, 68, *Bonham vs. Galloway, et al*. 3 *Strobhart's Eq. Rep.*, 63, 64, *Lang vs. Brevard*. 12 *B. Monroe*, 45, *Rice vs. Downing*. 6 *Iredell*, 218, *Shelton vs. Hampton*. 12 *Do.*, 242, *Ponder vs. Carter*.

3. If the receipt of the new note by Mayhew did impliedly suspend the exercise of the right of sale, it could be a favor to Pyfer only, and this he waived by *ordering* and sanctioning the sale made, and by *ordering* the proceeds to be paid to Mayhew, the mortgagee. 2 *H. & G.*, 98, *David vs. Grahame*.

4. The proceeds being paid over to Mayhew, must, by the terms of the mortgage, at some time and in some way, be applied towards payment of the mortgage debt; and the essential

question in the case is, how, being insufficient to satisfy the whole debt, they ought to be applied to the *notes* given for the security of that debt?

5. They were applicable as far as they would go to the payment of the mortgage debt and notes *on the day* they were paid to Mayhew, though none of the notes except that which had been renewed had come to maturity. 3 *Bland*, 179, 180, *Salmon vs. Clagett*.

6. It is in general the privilege *first* of the debtor to make the application of his own payments, where there are different debts or items of account to which he may apply them. If he does not exercise the privilege, *then* the debtor has the right to make the application, and to do this he has some *latitude of time* allowed him. If neither make it then the law makes it. 2 *H. & G.*, 159, 173, *Mitchell vs. Dall*, and the same case in 4 *G. & J.*, 361, 372. 6 *H. & J.*, 235, 245, *Martin vs. Mechanics Bank. Chitty on Bills*, 402, 403. *Theobald on Principal and Surety*, 222, (1 *Law Lib.*, 131, 132.) 3 *Bing.*, 71, *Williams, et al., vs. Rawlinson.*

7. There are circumstances in evidence in this case from which a jury might infer that Pyfer and Mayhew applied, respectively, or intended to apply, the said proceeds to the entire discharge of the first two notes, and the balance only to the one sued on. And there is no evidence that either of them intended to apply them to the entire discharge of this note.

8. If there be no evidence either made or intended to make any application of said proceeds, the justice of the case and the law will apply them to the notes in the order in which they became due, although the endorsers on the first two were not by any means made liable for the payment of them. 3 *H. & McH.*, 390. *Wallace vs. Johnson.* 4 *H. & J.*, 351, 358, *Allstan vs. Contee. Chitty on Bills*, 403. 5 *Bing. N. C.*, 461, *Mills vs. Fowkes. Theobald on Principal and Surety*, 222, (1 *Law Lib.*, 131, 133.) 9 *Watts and Seargt.*, 43, *Neff's Appeal.* 1 *Alabama Rep.*, 23, *Cullum vs. Emanuel, et al.* 5 *How.*, 202. There was no such contract in this case to extend the time as there was in the case of *Hunter vs. Van Bomhorst*, 1 *Md. Rep.*, 504.

9. The prayer of the defendant is defective in form and ought not to have been granted, because it is not in conformity with material evidence in the cause. It leaves out the fact that Pyfer sold the property, not Mayhew. Again, it leaves a question of law to the jury as to whether the renewal was a *payment* of the old note.

*Charles H. Pitts* for the appellee. The sale of the mortgaged property by an arrangement between Pyfer and Mayhew was a fraud upon the sureties. The creditor has no right by collusion with his debtor to change the nature of collaterals held by him for the benefit of sureties, but is bound to protect sureties upon property held as collateral. The case of *Commonwealth vs. Vanderslice*, 8 *Seargt. and Rawle*, 452, is in point. As to the indulgence granted to Pyfer by applying the proceeds of sale to the two notes as they became due without protesting them, the sureties themselves, and they alone, have the right to judge of and sanction such indulgence. 8 *Bing.*, 156, *Combe, et al., vs. Wolf.*

The mortgage shows upon its face that its execution and that of the notes was one *entire transaction.* The sale of the mortgaged property without notice to the endorsers discharged them. Conceding the truth of the first point made on the other side, the question arises, whether a mortgagee who has acquired a right to sell by reason of forfeiture may not *waive* that right? This was done by the taking of the new note. Suppose a bill for an injunction had been filed by Pyfer or his sureties to restrain this sale until the new note became due, would a court of equity hesitate a moment to grant it? The sureties have the right to be substituted to all the rights of the creditor upon payment of the notes. Any variation of the contract by the creditor, whether it injures the surety or not, will discharge him. 9 *Wheat.*, 680, 703, *Miller vs. Stewart.* 2 *Caine's Cases,* 1, 29, 57, 63, *Ludlow vs. Simond.* 8 *Pick.*, 122, *Baker vs. Briggs.* 3 *Bland*, 173, *Salmon vs. Clagett.* 6 *G. & J.*, 243, *Sasscer vs. Young and Kemp.* *Chitty on Contracts,* 529. 8 *Wend.*, 512, *Wright vs. Johnson.* 2 *Penn. Rep.*, 27, *Bank of Washington vs. Barrington.*

Mayhew *vs.* Boyd.

The sureties were entitled to notice of non-payment as each note became due, and receiving none such they had a right to assume that they had been paid. They were by this lulled into a false security to their prejudice. They had the right to make the application of the proceeds, and as prudent men they would have said, pay the $900 *first.* Pyfer was then in Baltimore, and they could have taken steps against him for further security. The sale was, therefore, a violation of the contract and to the prejudice of the sureties.

Mason, J., delivered the opinion of this court.

The record in this case shows, that the endorsement by the defendant of Pyfer's notes to the plaintiff was based upon the security afforded by the mortgage, and therefore the mortgage may be regarded as the consideration of the agreement into which the surety entered when he consented to endorse the notes. The terms of the mortgage, therefore, must be strictly complied with by the plaintiff in order to bind the defendant as endorser. One of those terms is, there shall be no sale of the mortgaged property until default of the principal debtor to pay the notes upon their maturity. We think this part of the contract between the several parties thereto has been departed from in the sale which has taken place, under the circumstances detailed in the evidence. This sale took place before the maturity and dishonor of the notes in question, and without the assent, and, for all we know, without the knowledge, of the endorsers. It is true the first of the original notes had fallen due and was dishonored, but it is equally true, by the assent of all parties, another note was substituted in the place of it, which thereby took from the plaintiff his right to sell under the mortgage for the non-payment of that note:—the effect of the substitution of the one note for the other was to place the new note in the same relation to the mortgage that the first one had borne. Before these notes became due, as we have already shown, the sale took place.

But it may be said, that although this might have been a departure from the strict letter of the contract between the parties, yet it cannot be shown that the endorsers were preju-

diced thereby or their liability enlarged. Whether this was or was not the result of the premature sale, does not vary the question. Any dealings with the principal debtor by the creditor which amounts to a departure from the contract by which a surety is to be bound, and which by possibility might materially vary or enlarge the latter's liabilities without his assent, operates as a discharge of the surety. In this case it is not improbable, much less impossible, that if the plaintiff had duly protested the first two notes as they fell due and were dishonored, the endorsers, or one of them, might have paid them off, and by immediately suing the debtor thereon might have secured the debt and thereby reserved the whole of the mortgaged property in the hands of the plaintiff for the purpose of meeting the third and last note upon its maturity. The sale of the mortgaged goods, under the circumstances under which it took place, deprived the endorser of the opportunity of pursuing the course we have pointed out, and of the chances, at least, of relieving himself from liability altogether.

Believing that the sale of the property under the circumstances was a violation .of the terms of the contract with the endorsers, by which their rights might have been prejudiced, they are thereby discharged.

*Judgment affirmed.*