# WHEELING.

LEONARD v. COUNTY COURT OF JACKSON COUNTY.

Submitted June 25, 1884.—Decided Nov. 15, 1884.

*(JOHNSON, P., absent.)

1. The liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances, pointed out in his obligation, he is bound and no farther. It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract. If the contract has been altered in the slightest particular, without his assent, he may say, *"Non in hœc fœdera veni."*

2. Commissioners on behalf of the supervisors of a county contract with a bridge-builder to build a bridge for the county, reciting that the contractor is a bridge builder by trade and that the commissioners know but little about bridges, and providing that the contractor shall furnish all the materials and complete the bridge in a durable and substantial manner so that it shall stand the test of time and flood and be finished and delivered for use on *or before* December 1, 1868 ; the bridge to be paid for in installments, but the last installment, which is to be paid by certificates of indebtedness out of the county levy of 1869, is not to be paid until the whole work is completed and received. For the faithful performance of this contract the contractor executed bond with securities. Upon the report of the commissioners that the bridge had been completed so far as they can see except one of the abutments which seems to them to be cracking and settling, the supervisors on Nov. 16, 1868, issued certificates for the last instalment to be paid out of the levy of 1869 and delivered them to the contractor. Within two years thereafter, a part of the bridge fell down and the county brought an action at law on the bond against the sureties therein. They filed their bill in equity,

*Counsel below.

alleging the foregoing facts and claiming that the supervisors, by receiving the bridge in the condition it was and making the last payment as they did, varied and changed the obligation of their undertaking and thereby released them from liability on their bond, and asking a perpetual injuction against the prosecution of said action at law against them.  HELD:

That facts alleged in the bill did not show that the obligation of the plaintiffs had been varied or changed by the action of the supervisors, and that they were, consequently not discharged, and that the bill should be dismissed on demurrer.

SNYDER, JUDGE, furnishes the following statement of the case :

The board of supervisors of Jackson county, by orders made and entered of record September 2, 1867, and October 7, 1867, appointed R. S. Brown and others commissioners to contract for the building of a bridge across Big Sandy creek near Ravenswood, in said county, in the manner and upon the terms and conditions specified therein.  Pursuant to the authority thus vested in them, the commissioners, on October 29, 1867, made a contract with George K. Leonard, by which the latter agreed to build said bridge according to the plan and specifications therein set forth ; and among other stipulations therein contained, are the following :

"And further, it is the express understanding and agreement that said party of the first part is to furnish all the material of whatsoever kind, and to build, erect and complete the said bridge in all respects of stone, iron and wood, in the best and most substantial and approved workmanlike manner as fully and particularly as if each item was herein specially mentioned and described, it being known and understood that the party of the first part is a bridge builder by trade, and the parties of the second part know but little about bridges, so the party of the first part is to build, erect and complete in manner aforesaid, the said bridge in a substantial and durable manner, so that the same shall stand the test of time and flood, and to have the whole structure finished and delivered to the public for use on or before the first day of December, 1868.

"And it is further agreed that in consideration of the premises aforesaid, the said parties of the second part, for and on

behalf of the said board of supervisors of Jackson county, are to cause to be paid to the said party of the first part for the said bridge the sum of one thousand dollars on the execution of these presents, and the bond being given for the faithful execution of said work hereto annexed, and the residue of the money now being, to-wit, the sum of $——, on the 15th day of December, 1867, and the residue of $9,000, (nine thousand dollars) the whole contract price to be paid as follows, to-wit: $3,500 (three thousand five hundred dollars) out of the levy of 1868, to be paid by certificates of indebtedness to be issued by said board of supervisors from time to time as the work progresses, or in cash if in the county treasury applicable thereto, and the residue, to-wit, the sum of $3,500 (three thousand five hundred dollars) out of the county levy of 1869, which last payment shall be by certificate of indebtedness drawn by said board of supervisors, and to bear interest from the time when said bridge shall be completed and received. Said work to be begun at once and prosecuted diligently as the weather may permit until completed; and said commissioners may estimate the work done and materials for the same on the ground at the end of each month, and certify the same to said board; and upon such certificate the said board are to pay the installments aforesaid, as the work progresses as aforesaid, from time to time as aforesaid, except said last installment which is not to be paid until the whole work is completed and received as aforesaid."

At the same time, to-wit, Oct. 29, 1867, the said George K. Leonard and A. G. Leonard, Thompson Leach, W. B. Caswell and Alfred Foster as his sureties executed to said commissioners their joint and several bond in the penalty of $10,000 with the following condition thereto:

"The condition of the above obligation is such that whereas, the above bound George K. Leonard did, on the 29th day of October, 1867, make and enter into a contract with R. S. Brown, Charles Harpold, John Rawling, Deming Wagner and Isiah Morgan, commissioners acting for and on behalf of said board of supervisors, whereby the said Leonard agreed to build, erect and complete a good and substantial bridge, with solid stone abutments and good and durable superstructure, to be in all respects erected, built and completed

according to said contract in writing to be attached to these presents, and reference is here given thereto for more full particulars of the way and manner said bridge is to be completed: Now, if the said George K. Leonard shall erect and complete the said bridge at the place within the time and in manner prescribed in the said contract hereunto annexed as aforesaid, and shall in all respects comply with the said contract on his part, then this obligation to be void, else to remain in full force and virtue."

Subsequently, the commissioners made their report to the board of supervisors in these words:

"The undersigned commissioners appointed by the board of supervisors of Jackson county, West Virginia, to contract for and superintend the building of a bridge over Big Sandy creek near Ravenswood in said county, do hereby certify that said contract was made with G. K. Leonard, of Parkersburg, and that he has built and completed said bridge in accordance to the contract so far as we can see and to our satisfaction, except the north abutment, which seems to us to be cracking and settling, and within the time specified, but we do hereby recommend and direct that the president and clerk of the board of supervisors do issue to the said Leonard the county certificates of indebtedness for $3,500, payable out of the county levey of 1869, with interest from date, as specified in the contract, which amount is the balance in full of the contract price for said work, but we do not intend to release said contractor from any warranty expressed or implied, in said contract.

"Given under our hands this 10th day of November, 1868."

On November 16, 1868, the board of supervisors entered this report on their order-book and made and entered thereunder this order:

"The board of supervisors of Jackson county do hereby receieve the Sandy creek bridge near Ravenswood in this county from G. K. Leonard, contractors, as recommended by the commissioners, and order that he receive certificates of indebtedness, $3,500, in denominations as follows:

| | |
|---|---|
| (1) one thousand certificate .. .............. .... ......... | $1,000 |
| (4) four five hundred    "    ...    ...    .....    .......... | 2,000 |
| (2) two two hundred and twenty-five certificates............... | 450 |

(1) fifty——   certificate, ... ...... ... ... .. ... ..   50

Aggregate.............. ................... ............ $3,500."

Afterward, on July 24, 1871, the supervisors instituted an action of covenant in the circuit court of Wood county against said George K. Leonard and his sureties on said bond of Oct. 29, 1867 for an alleged breach of the condition thereof by the said George K. Leonard. The declaration in this action, after averring generally the breaches complained of, states that the said George K. Leonard failed to build said bridge in the manner and of the material specified in the said contract and that by reason of such failure, "in a very short time after the bridge was put up both of the abutments and all of the wing-walls gave way, and the whole structure from these causes and by reason of many other breaches in said contract, gave way and settled in such a manner that it had to be propped up, and the plaintiff was put to great trouble and expense, to-wit, to the expense of $3,000 in repairing the said bridge so as to make it at all safe for the public to pass over it." The damages claimed are $10,000. For the full text of this declaration as originally filed see *Supervisors* v. *Leonard*, 16 W. Va., 472. This action, after sundry proceedings had in it, was finally removed to the circuit court of Jackson county where it is still pending and undetermined.

On August 15, 1883, the county court of Jackson, successor of the supervisors of said county, brought an action of debt in the circuit court of said county on said bond of October 29, 1869, against A. G. Leonard, Thompson Leach and W. B. Caswell, surviving obligors therein, the said co-obligors, George K. Leonard and Alfred Foster, being then dead. The plaintiffs alleging as a breach of the condition of said bond, that the said George K. Leonard, in his lifetime, failed to build and construct said bridge in the manner and of the materials specified in said contract and that by reason of such failure, "in a very short time after the said bridge was put up, to-wit, after the 24th day of July, 1871, to-wit, on the —— day of January, 1880, the wing walls of the abutment of said bridge on the north side of said creek gave way, and the said wing walls and abutments of the said bridge, built, erected and constructed by said George K. Leonard,

on the north side of said creek, fell down, and the whole superstructure, from these and by reason of many other breaches in said contract, gave way and became and was for a long space of time, to-wit, from the day and year last aforesaid until the date of the institution of this suit, impassable and unsafe for the ordinary public use and travel, and the plaintiff was thereby put to great trouble and expense, to-wit, to the expense of $2,500, in rebuilding the said abutment and wing walls and a pier for said bridge on the north side of the said creek, and in putting in braces in said bridge and repairing the floor thereof and making other necessary repairs therein so as to make said bridge at all safe for the public to travel and pass over it."

This action is, also, pending and undetermined in the said court.

On the first day of November, 1883, the said A. G. Leonard, Thompson Leach and W. B. Caswell exhibited their bill in the circuit court of Jackson county against the county court of said county and the administrator of George K. Leonard deceased, in which the plaintiffs after setting forth, in substance, the orders, contract, bond, the pending of the actions at law and the declarations filed therein, which are hereinbefore set forth, aver that the said supervisors of Jackson county did in fact receive said bridge from the said George K. Leonard, and without their consent did issue and deliver to him certificates for the total amount of $3,500, in full or the balance of the contract price of the bridge, which have been paid off; and they insist that the supervisors, by paying the said sum to said Leonard or by delivering to him said certificates with full notice of the premises and the condition of said bridge without their consent, did thereby materially change the said contract, which provided that the said last installment was not due nor to be paid to said Leonard until the whole work of building said bridge was completed and received by said supervisors, and the said supervisors thereby did, without their consent, surrender to said Leonard the fund which was to remain in their hands for the completion of said bridge if it was not completed, and they did thereby deprive the plaintiffs, as sureties of said Leonard, of the said $3,500 which was to protect and save them as well as

said supervisors harmless against any failure or default of said Leonard in building and completing said bridge according to said contract; and that by said payment in the manner and at the time aforesaid, the said supervisors changed the said contract as well as their relation to the said Leonard from that of debtor to that of creditor, and they thereby did release and have discharged the plaintiffs, as sureties, from all liability by reason of the obligation of said bond. The plaintiffs, thereupon, pray that said county court may be perpetually enjoined from prosecuting said actions at law or any others against them as sureties upon said bond, &c.

The injunction, as prayed for, was granted September 21, 1883, the defendant, the county court, appeared and demurred to and answered the bill, and gave notice of a motion to dissolve the injunction. The said answer does not deny the material averments of the bill, but does deny the legal conclusions asserted by the plaintiffs, or that said defendant has done anything to change the liability of, or to release, the plaintiffs in any manner or respect.

There was a general replication to the answer, and the cause having been set for hearing, the court, on November 9, 1883, entered a decree sustaining the defendant's motion to dissolve the injunction and without passing, in terms, upon the demurrer, dissolved the injunction and dismissed the bill with costs. From this decree the plaintiffs have obtained the appeal to this Court.

*J. A. Hutchinson*, for appellant.

*R. S. & C. L. Brown*, for appellee.

SNYDER, JUDGE:

The counsel for the appellants, to sustain this appeal, has referred to and relies upon the following legal propositions:

The contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction. The creditor is bound to observe good faith with the surety. He must withhold nothing, conceal nothing, release nothing which may possibly benefit the surety. If any stipulations, therefore, are made between the creditor and the debtor, which are not communicated to the surety, and are

inconsistent with the terms of his contract or are prejudicial to his interests therein, they will operate as a virtual discharge of the surety from the obligation of the contract.   1 Story's Eq. Jur. § 324.

If a creditor does any act injurious to the surety, or inconsistent with his rights, or if he omits to do any act, when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases the latter will be discharged, and he may set up such contract as a defense to any suit brought against him, if not at law, at all events in equity.   *Id.* § 325.

The liability of a surety is not to be extended by implication, beyond the terms of his contract.   To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no farther.   It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit.   He has a right to stand upon the very terms of his contract.   If the contract has been altered in the slightest particular without his assent, he may say, " *Non in hæc fœdera veni.*"   *Miller* v. *Stuart,* 9 Wheat 680 ; *Bonar* v. *Macdonald,* 1 Eng.   L. & Ch. 1 ; *Holme* v. *Brunskill,* 28 Eng. Rep. 401.

A surety is discharged by any dealing by the creditor with the principal which amounts to a departure from the terms and conditions of the contract.   Thus, when the contract is for a work or improvement to be paid for by installments, if the principal is paid faster than the contract provides, the surety will be discharged.   *Mayhew* v. *Boyd,* 5 Md. 102 ; *General S. Nav. Co.* v. *Rolt,* 95 Eng. Com. L. 550.

These general principles of equity are not only based upon reason and justice, but they are fully sustained by the English and American adjudications on the subject.   It is not intended by anything that may be said or determined in this cause to question or qualify these fundamental equity rules.

All the material facts in this cause being matters of record and fully set out in the bill and the answer being simply a denial of the legal conclusions drawn by the bill from those facts, it seems to me, that a decision of the questions presented by the demurrer to the bill will dispose of the cause.

In view of the averments of the bill, the counsel for the

appellants claims, that the supervisors, being aware of the condition of the bridge at the time they received it from George K. Leonard, the contractor, and seeing that it was defective and the north abutment "seemed to be cracking and settling," by receiving the bridge in that condition and then paying the last installment of the contract price for the bridge, thereby changed the contract and released the appellants as the sureties of said contractor. This position assumes that the supervisors received the bridge from the contractor and paid him the last instalment for its construction before the bridge was completed according to the terms of the contract and, consequently, before said instalment had become due. The question thus presented, then is rather one of fact than of law. The important enquiry is, did the supervisors receive the bridge and pay said last instalment before the time contemplated by the contract? The answer to this enquiry must be drawn from the true interpretation of the contract and the consequent action of the supervisors in reference thereto.

By the contract the contractor bound himself to furnish all the materials and build and complete "the bridge in a substantial and durable manner, so that the same shall stand the test of time and flood, and to have the whole structure *finished and delivered* to the public for use on *or before* the first day of December, 1868." It was also expressly stated in the contract that the contractor was "a bridge builder by trade" and that the commissioners "knew but little about bridges." This stipulation was a material representation and was manifestly intended by the parties to operate as a guaranty on the part of the contractor that he would build a bridge of the character described and deliver it to the public and that the commissioners having but little knowledge of bridges, their judgment was not to be relied on by the contractor, but that he being a bridge builder by trade was to guarantee his work and complete and deliver it on or before the time designated. The plain meaning and effect of this provision is that the contractor and not the commissioners was to be the judge of the character of the bridge and to decide when it was completed according to the terms of the contract and he was then to deliver it to the public for use,

There is not a word in the contract that the commissioners or the supervisors were to be the judges of the sufficiency of the bridge or that they had any legal right to refuse to receive it when delivered to them by the contractor. They did not reserve to themselves the right to decide when the bridge should be regarded by them as completed. They expressly stated that they knew but little about such matters and must necessarily have relied wholly upon the good faith and judgment of the contractor to complete and deliver the bridge, and in the event he should fail to do so ·or deceive them, then he and his sureties were to be liable on their bond. It would have been rather singular for the commissioners to have contended, in the face of the contract in which they had said that they were ignorant and that the contractor was an expert in such matters, that the bridge was not completed when the contractor decided and insisted that it was completed according to the contract. By the very terms of the contract they admitted that their judgment was of no value while that of the contractor was of the highest value. It is not at all remarkable, then, that when the contractor informed them that the bridge was completed and delivered it to them as completed, they should have acquiesced in his decision even though the north abutment "*seemed* to them to be cracking and settling" and that they, taking the judgment of the contractor in preference to' their own, should have recommanded the issuing of the certificates for the last payment on the bridge to be made "payable out of the county levy of 1869 as specified in the contract." And to show more fully that such was the fact and the construction given by them and the contractor to the contract they further expressly state in their report that they "do not intend to release said contractor from any warranty, expressed or implied, in said contract." Of course, if this reservation had not been implied in the contract itself, the insertion of it in this report would not bind the appellants, but inasmuch as it is justified by a reasonable construction of the contract, the appellants are bound by it as a part of the agreement entered into by them as the sureties of the contractor. I do not, therefore, think there was any variations or change of the obligation of the appellants by reason

of the acceptance of the bridge by the supervisors under the circumstances and in the manner they did, and that the appellants are not on that account discharged from the liability.

The next question is did the supervisors anticipate the payment of the last installment of the price of the bridge? The contract, after fixing the time for the payment of the first $2,000 provides, that "the residue of $9,000, the whole contract price, shall be paid as follows, to-wit: $3,500 out of the levy of 1868, to be paid by certificates of indebtedness to be issued by said board of supervisors from time to time as the work progresses, or in cash if in the county treasury applicable thereto, and the residue, to-wit, the sum of $3,500 out of the county levy of 1869, which last payment shall be by certificates of indebtedness drawn by said board of supervisors, and to bear interest from the time when said bridge shall be completed and received." After stating that said board shall, upon the estimates of the commissioners pay the installments aforesaid as the work progresses, the contract concludes, "except said last installment which is not to be paid until the whole work is completed and received as aforesaid."

By their report dated November 10, 1868, the commissioners recommended and directed the president and clerk of the board of supervisors to issue to the contractor " the county certificates of indebtedness for $3,500, payable out of the county levy of 1869, with interest from date *as specified in the contract.*" In accordance with this recommendation the board of supervisors *ordered* that that the contractor " receive certificates of indebtedness for $3,500, in denominations as follows," then the number and amounts of the certificates, aggregating $3,500, are given. This order is dated November 16, 1868.

There is no averment in the bill when these certificates were issued, but assuming that they were in fact issued on the day the order for their issuance was made, it does not appear that they were issued before the time the contract provided that they should be issued. It is not. pretended that they were made payable otherwise than out of the levy of 1869, and the contract provided that the bridge should be completed on *or before* December 1, 1868, and that the last

installment should "not be paid until the whole work is completed and received." There is no averment when these certificates were paid, and as they were payable out of the levy of 1869, the legal presumption is that that they were not paid until the latter part of the year 1869. The bridge having been, in fact, as we have seen, properly received on the 16th day of November, 1868, the last installment could have been paid on that day without any variation of the contract, because it did not prohibit such payment after the bridge had been completed and received. It, therefore, seems to me, clear that there was no variation or change in the contract by the supervisors or the commissioners, either in accepting the bridge in the manner and at the time they did, or in making the order for the issuing of the county certificates for the last payment on the bridge at the time they did so. From this conclusion, it necessarily follows that the allegations of the bill show no ground for the discharge of the appellants from liability, and that the demurrer thereto should have been sustained.

For the reasons aforesaid, I am of opinion that the decree of the circuit court should be affirmed.

AFFIRMED.