[Sac. No. 1322.   Department Two.—April 6, 1905.]

COUNTY OF GLENN, Plaintiff, Respondent, v. I. A. JONES et al., Defendants; MILTON FRENCH, and H. J. SUMMERS, Appellants.

BUILDING CONTRACT—BOND OF CONTRACTOR—RELEASE OF SURETIES—PREMATURE PAYMENT — EXCESS OF PROFITS — ABANDONMENT OF CONTRACT.—The sureties on the bond of a contractor to secure the performance of a building contract are entirely released by the premature payment, without their consent, of the first installment before all materials were furnished, as required by the contract, where the contractor, upon receiving such payment, abandoned the contract, leaving materials unpaid for, which were lost in attachment suits, and where the payment exceeded the profits he would make by performance of the contract.

ID.—RIGHTS OF SURETIES—EXECUTION—CHANGE OF OBLIGATION OF PRINCIPAL.—The sureties had the right to stand upon the terms of their

contract, and were exonerated by a change in the obligation of the principal without their consent. By such premature payment the sureties were deprived of the inducement which the principal would have to perform the contract in due time; and the obligation of the principal was changed in a material respect without their consent.

APPEAL from a judgment of the Superior Court of Glenn County. Oval Pirkey, Judge.

The facts are stated in the opinion.

Frank Moody, and William M. Finch, for Appellants.

R. L. Clifton, and Thomas Rutledge, for Respondent.

COOPER, C.—Action to recover damages against a contractor and his sureties for failure to build a schoolhouse according to contract.

Findings were filed, upon which judgment was entered against the sureties for the penal sum of the bond. From the judgment they have appealed on the judgment-roll accompanied by a bill of exceptions.

The facts are in substance as follows: In October, 1902, defendant Jones entered into a written contract with plaintiff, by the terms of which Jones was to furnish all material and construct for plaintiff a high-school building in the town of Willows, in the said county, for the sum of $5,580, to be paid as follows: $1,860 when Jones shall have delivered all material for said building on the building-site; $1,860 when the roof is on; and the balance, $1,860, on full completion and acceptance of the building.

Plaintiff required and Jones gave a bond in the sum of $2,500, with appellants as sureties. This bond referred to the contract, plans, and specifications, and was conditioned that Jones should "do and perform all things necessary to the erection of said high-school building according to the said plans and specifications above referred to, and according to the contract of even date herewith." In November, 1902, Jones had delivered the rough lumber and a portion of the materials on the building-site, and he then applied to plaintiff through its board of supervisors and was paid the first payment, $1,860. This payment was prematurely made without

the consent of appellants, and, at the time it was made, the materials that had been delivered on the site did not exceed in value $1,900, and the total value of the materials necessary for the construction of the building was about $5,000. The chairman of plaintiff's board of supervisors testified that Jones came before the board and wanted the contract changed. "He asked the board if there could not be some change made wherein he would not have to place it [the material] there. My recollection is that the board agreed with him and wanted to assist him along with the work, and agreed with him that they would make a payment when the rough material was all on the ground." After the payment Jones pocketed the money, abandoned the contract, and left the materials upon the site unpaid for, most of which were afterwards taken and sold under attachment suits by the materialmen. Plaintiff lost the amount paid, and had to again advertise and let the contract at an increased cost of $1,070 over the original contract.

The only question that need be discussed is: *Did the premature payment made by plaintiff release the sureties?*

The contract of suretyship imports entire good faith and confidence between the parties as to the whole transaction. The creditor is bound to observe good faith with the surety. He must withhold nothing, conceal nothing, release nothing which will possibly benefit the surety. He must not do any act injurious to the surety or inconsistent with his rights. He must not omit to do any act required by the surety which duty enjoins him to do, if such omission injures the surety. The liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent, and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no farther. He has a right to stand on its very terms. (1 Story's Equity Jurisprudence, secs. 324-325; *Tally* v. *Parsons,* 131 Cal. 518; *Carter* v. *Mulrein,* 82 Cal. 169.[1]) A surety is exonerated in like manner with a guarantor. (Civ. Code, sec. 2840.) "A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the

[1] 16 Am. St. Rep. 99.

remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." (Civ. Code, sec. 2819.)

In our opinion the obligation of the principal was altered in a material respect without the consent of the sureties. The contractor was under the obligation of placing all the materials on the building-site before he was entitled to any money under the terms of his contract. By the payment to him before he had done so, he secured the money before performing his obligation. The pressure which would have been exerted upon him to continue in the performance of his contract and place all the materials on the site, was removed when he received the money. He received it before he was entitled to it, without the consent of the sureties. The sureties had bound themselves upon the assumption that the plaintiff would keep its contract in good faith. We can see no difference in principle if the whole of the contract price had been paid before any of the materials were placed on the ground. In such case could any one doubt that the sureties would have been exonerated? The risk of guarantying the construction of a building to be paid for when completed and accepted, is quite different from the risk of guarantying its construction, if the whole contract price should be paid in advance. In the one case the contractor can only get the money by performing his contract, while in the other he would only pay out the money already received, in performing it. In this case the sureties agreed and guaranteed that Jones would place all the materials on the building-site, on condition that he was to receive no money until he had done so; they did not agree that if paid in advance he would place such materials on the site. By the payment, the hope of reward for further performance was lost, the temptation to act dishonestly was increased.

It is said in Brandt on Suretyship and Guaranty (2d ed., vol. 2, sec. 397): "A surety for the completion of work to be performed by the principal, when, by the terms of the contract the principal is to be paid by installments, is discharged if the principal is paid faster than the contract provides. The surety is thereby deprived of the inducement which the principal would have to perform the contract in due time."

The leading case, which has since been followed by the courts almost without exception, is *Calvert* v. *London Dock Co.*, 2 Keene Ch. 639. There the contractor undertook to perform certain work, and it was agreed that three fourths of the work, as finished, should be paid for every two months, and the remaining one fourth upon the completion of the whole work. It was held that the sureties were released by reason of payments exceeding three fourths of the work done, having, without the consent of the sureties, been made to the contractor before the completion of the whole work. The opinion was delivered by Lord Langdale, the master of the rolls, in which he said: "What the company did was perhaps calculated to make it easier for Streather to complete the work, if he acted with prudence and good faith; but it also took away that particular sort of pressure by which the contract was intended to be applied to him. And the company instead of keeping themselves in the situation of debtors, having in their hands one fourth of the value of the work done, became creditors to a large amount, without any security; and under the circumstances, I think that their situation with respect to Streather was so far altered, that the sureties must be considered to be discharged from their suretyship." The leading case was followed in this country in the early case of *Taylor* v. *Jeter*, 23 Mo. 244. There the owner paid to the contractor the contract price before the completion of the building, and it was held that such payment exonerated the sureties. The court said: "The owner having notice of them [liens] and paying what by the substantial terms of the contract he was entitled to retain until they were removed, voluntarily abandoned a fund, which, according to the conditions of the contract, was to accumulate in his own hands, as the primary security for its due performance, and in which the surety had an equal interest with himself. He must, therefore, bear the loss occasioned by his own negligence or folly."

The cases of *Calvert* v. *London Dock Co.* and *Taylor* v. *Jeter* were followed and quoted with approval by this court in *Bragg* v. *Shain*, 49 Cal. 131, where it was held that a payment of more than seventy-five per cent of the contract price, where the contract provided that twenty-five per cent should be paid when the work was completed, had the effect to release

the sureties; and in the later and similar case of *Kiessig* v. *Allspaugh*, 91 Cal. 231, the same rule was adhered to. The question is extensively discussed in a case very similar to this, *Board of Commissioners* v. *Branham*, 57 Fed. 179, and it was held that where a payment not to exceed $7,840 was to be made when a building was half completed and a payment was made in the sum of $10,046.68, the sureties were released. To the same effect see *Truckee Lodge* v. *Wood*, 14 Nev. 293; *Carson Opera House Assn.* v. *Miller*, 16 Nev. 327; *Simonson* v. *Grant*, 36 Minn. 439; *Ryan* v. *Morton*, 65 Tex. 259; *Peters* v. *Mackay*, 20 Wash. 172; *Wehrung* v. *Denham*, 42 Or. 386; *Mayhew* v. *Boyd*, 5 Md. 102;[1] *General Steam Navigation Co.* v. *Rolt*, 6 J. Scott, N. S. 549.

Respondent relies upon certain cases which, it claims, sustain its theory, but after a careful examination of them we are of opinion that they are either erroneous or not in point. The principal one is *Hand Mfg. Co.* v. *Marks*, 36 Or. 523. In that case the first payment of two thousand dollars was to be made when the basement was built and the first-story rough floor laid. The owner let the contractor have five hundred dollars on his due bill, and paid him three hundred dollars, before the payment was due. The contractor built the basement and laid the first-story floor and received the architect's certificate, at which time the due bill was surrendered, and the settlement for the first payment made in full. The court in its opinion quotes with approval *Calvert* v. *London Dock Co.*, 2 Keene Ch. 639, and said that while the owner "may have been guilty of a technical breach of his contract in making the advances, yet it did not operate to the impairment of any reserved security of which the sureties could complain . . . all the money thus advanced was applied on account for materials furnished and used in the structure."

In the present case the materials were never placed upon the site, nor was the money advanced used in the purchase of materials for the structure. The fund, which the plaintiff should have held as security, was given up without the consent of the sureties. There is an expression in *Meyers* v. *Wood*, 26 Tex. Civ. App. 591, which supports respondent, but the facts of the case are not clearly stated. It does not appear that the question was argued before the court, and

[1] 59 Am. Dec. 101.

the opinion cites no authority in support of the statement therein made. The same may be substantially said as to *Fidelity and Deposit Co. of Maryland* v. *Robertson,* 136 Ala. 379. No authority is cited and no reason given for the statement contained in the opinion.

The case of *Leonard* v. *County Court.* 25 W. Va. 52, is cited, but it does not sustain respondent's position. On the contrary, it is said in the opinion: "A surety is discharged by any dealings by the creditor with the principal which amounts to a departure from the terms and conditions of the contract. Thus where the contract is for work or improvement to be paid for by installments, if the principal is paid faster than the contract provides, the surety shall be discharged."

Finally, respondent contends that if the rule be applied as we have endeavored to show it should be, the sureties could only be released to the extent of the premature payment. We do not think the facts of this case warrant the application of such rule. The contract might have been fully performed by Jones if the plaintiff had not given him money before it was due. After he had received more money than he could possibly have made as profit by continuing his contract, the pressure that should have continued to keep him honest was entirely removed and he was left without compass or rudder to follow his own dishonest inclinations. We think it the better rule in a case like this to hold that the sureties are entirely released. Where plaintiff willfully departed from its contract, and gave the contractor money not due him, and the damages occurred by reason thereof, we do not feel called upon to enter the field of conjecture as to whether or not the loss should be shared by the parties.

The judgment should be reversed.

Harrison, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed. McFarland. J., Lorigan, J., Henshaw, J.