[S. F. No. 4911. In Bank.—January 4, 1910.]

FRED RUSSELL et al., Copartners, Respondents, v. GEORGE ROSS and the PACIFIC SURETY COMPANY (a Corporation), Appellants.

SURETY—CONTRACT PAYABLE IN INSTALLMENTS—LOAN—EVIDENCE.—In an action to enforce the liability of a surety to a contract for the building of a vessel, the price of which was payable in installments as the work progressed, it is held that the evidence, although conflicting, supported the finding of the jury to the effect that certain payments made during the progress of the work to sureties by the contractor's surety were personal loans to them, and were not premature payments of the contract price made to the contractor.

ID.—PREMATURE PAYMENT OF CONTRACT PRICE.—The action having been tried upon the theory that any prepayment of the contract price would have exonerated the surety, and the fact of such prepayment having been determined adversely to its contention, the question whether such a prepayment would have released the surety is rendered purely academic, and is not decided.

ID.—FAILURE TO COMPLETE CONTRACT—PERFORMANCE OF WORK BY OWNER.—Upon the failure of the contractor to complete the vessel, and the refusal of his surety to have anything to do with the matter, the owner had the right to finish the work, making the loss to the surety as light as possible.

ID.—CONTRACTOR REMAINING ON WORK AS FOREMAN OF OWNER.—The fact that the original contractor, after his abandonment of the work and while it was being completed by the owner, remained as foreman without a salary, did not have the effect to create a new contract.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Myrick & Deering, Edward F. Treadwell, and Mastick & Partridge, for Appellant the Pacific Surety Company.

W. H. Hutton, for Appellant George Ross.

Walter H. Linforth, and Jackson Hatch, for Respondents.

MELVIN, J.—This action was brought to recover damages for an alleged breach of contract. The jury found a verdict for ten thousand dollars in favor of plaintiffs, and this appeal is prosecuted from the judgment and from the order denying defendants' motion for a new trial.

It appears that in May, 1902, plaintiffs entered into a contract with defendant Ross for the building of the hull of a vessel at Coos Bay, Oregon, the price to be $26,725. The Pacific Surety Company executed and delivered to plaintiffs a bond in the sum of ten thousand dollars conditioned upon the faithful performance of the contract by Ross. The agreement between plaintiffs and Ross provided for payments at various times during the building of the vessel, each payment, except the first, depending upon the amount of progress made upon the work. The first four payments, amounting to twelve thousand five hundred dollars, were duly made under the terms of the contract. On September 13, 1902, before the fifth payment became due, Ross telegraphed to plaintiffs for an advance. Plaintiffs took the telegram to Messrs. Foard & Anderson, who were sureties of Ross to the Surety Company, showed them the message and informed them that, in the opinion of plaintiffs and their lawyers, no prepayment of the installment could be made by plaintiffs to Ross without releasing the Surety Company from liability under the bond. After some discussion plaintiffs loaned Foard & Anderson two thousand five hundred dollars, taking the promissory note of the latter firm for that amount, and this money was sent by Foard & Anderson to Ross with the knowledge of plaintiffs. Subsequently the fifth installment became due, and Ross requested that it be paid to Foard & Anderson. This was done by cancellation of the aforesaid note. No interest charge was made. On October 6, 1902, a similar transaction occurred, whereby Foard & Anderson borrowed one thousand dollars and sent it

to Ross, giving the plaintiffs their promissory note as before. Later Ross and Messrs. Foard & Anderson wrote to plaintiffs asking for more money and plaintiffs refused either to loan or advance any additional sum.

About November 2, 1902, plaintiffs learned that the vessel had been attached. Thereupon Mr. Russell went to Oregon; paid $4038.57 demanded by the attaching creditors, and settled other claims. These amounted in the aggregate to $9178.30. He then placed Captain Peterson in charge as representing his firm, and proceeded to finish the hull, at a cost of fourteen thousand dollars. Ross remained as overseer or foreman without compensation. Ross's own testimony on this point is as follows: "I . . . had a pride in the boat and would like to finish it if I was able. He then said he did not see anything to be done but finish the boat, and I offered him my services without charge or expense to him in completing her. I then went to Prosper with him, and he drew checks, paying off the claims and liens on the boat." Ross also remained on the vessel until its delivery in San Francisco.

Upon these facts and others that will appear later in the discussion the district court of appeal reversed the judgment and the order denying a new trial.

In the opinion rendered by the district court of appeal it is held that the transaction between Russell & Rogers Co. and Messrs. Foard & Anderson, by which the latter were loaned amounts to be advanced later by them to Ross, with the knowledge of Russell & Rogers Company, amounted to the same thing as a payment directly to Ross by respondents, in violation of the terms of the contract; and that the Surety Company was thereby released from all liability under its agreement of suretyship. The case principally relied upon for the support of these conclusions is *County of Glenn* v. *Jones,* 146 Cal. 518, [80 Pac. 695].

In opposition to these views, respondents contend that the question whether or not premature payments were made is one dependent for solution upon conflicting evidence, and that the jury having found no violation of the building contract, an appellate tribunal cannot set aside that conclusion. They also contend that even granting the prepayment of amounts due under the contract, such advances do not of themselves release the sureties. Their theory is that no such release occurs unless

prepayment places the surety company in a different and more disadvantageous position than that which it would occupy if no untimely payments had been made.

It seems to us that this case presents a sharp conflict of evidence. On the one hand there are declarations on the part of plaintiffs which seem to indicate that they believed their dealings were in effect directly with Ross. In answer to a letter of Foard & Anderson, plaintiffs wrote on October 17, 1902: "We are in receipt of your letter requesting us to make a further advance to George Ross. In reply thereto would say that we have already paid all that the contract requires, and advanced one thousand dollars besides, and we cannot do anything more. Very truly yours, (signed) Russell & Rogers Company." After the completion and launching of the vessel plaintiffs wrote to the Surety Company, "We have paid to George Ross the sum of $13,747.67 in excess of the contract price, and we now make demand on you for the payment of the amount of your bond, $10,000." They also sent to the persons for whom they were having the vessel built a statement containing, among other things, the following items: "Total cost of construction $40,472.67; contract price $26,725.00; amount George Ross exceeded his contract $13,747.67." And in the first complaint filed by them appeared the statement that "said plaintiffs were compelled to and did pay to the said George Ross in the completion of said boat a sum exceeding $10,000 in excess of the said contract price of $26,725." There were other circumstances supporting the theory that plaintiffs considered their advances as being made to Ross and not to Foard & Anderson. These are indicated as follows in the opinion of the district court of appeal: "And as to the payment of $9178.30 by plaintiffs when Russell went up and met Ross at Coquille, Oregon, this was paid by plaintiffs by giving checks to Ross, drawn in his favor, and by him indorsed to the parties to whom the bills were owing. Not only this, but all further sums for material and labor were paid by plaintiffs. The bills were made out against Ross and certified to by him as being correct. The receipts were given to him and in his name. The amounts were charged on plaintiffs' books to him."

Let us now examine the evidence which supports the theory for which respondent contends. Plaintiff Russell testified that shortly prior to September 13, 1902, plaintiffs received a tele-

gram from Ross requesting them to advance to him twenty-five hundred dollars upon the contract; that he took this dispatch to the office of Foard & Anderson and informed a member of that firm that he had consulted his firm's attorney and had been advised by the latter that if they made the advance requested by Ross, such action would release the Surety Company from all liability; that on the day following, Mr. Foard called upon plaintiffs and asked them to advance the twenty-five hundred dollars; that they refused this request; that Foard & Anderson, who were the sureties of Ross to the Surety Company, requested plaintiffs to make them a loan of twenty-five hundred dollars, which they would then advance to Ross and obtain from him an order on plaintiffs for the next payment of twenty-five hundred dollars when it should become due; that they did loan this sum to Foard & Anderson, paying by a bank check drawn to the order of that firm and taking their note for twenty-five hundred dollars and interest; and that this transaction was entered on the books of Russell & Rogers Company, not as a payment to Ross, but as a dealing with Foard & Anderson. Witness Russell also swore that plaintiffs did not advance said sum of twenty-five hundred dollars or any sum to the defendant Ross, and did not make said loan either directly or indirectly to him, but, on the contrary, made it to Foard & Anderson, and to no other person or persons. He testified additionally that when the fifth payment became due Ross requested that it be made to Foard & Anderson, and that the indebtedness witnessed by the note was duly settled accordingly. Witness Anderson corroborated Mr. Russell in his account of the loan of twenty-five hundred dollars. The alleged loan of one thousand dollars to Foard & Anderson was made, according to Russell's testimony, under practically the same circumstances and with the same understanding which had existed with reference to the earlier one; but after the note came due Foard & Anderson having refused to pay it, Russell & Rogers Company brought suit, recovered the amount due upon the note and collected the judgment.

As to the abandoning of the contract by Mr. Ross, his own testimony was most positive. It appears from the testimony of plaintiff Russell that prior to November 1, 1902, plaintiffs received a letter from Ross, from which they learned that the boat had been attached; that Ross was in financial straits; and

that he could not launch the boat unless he could get more money. This letter was immediately shown to the officers of the Surety Company, who declined to do anything upon the ground that the liability of the company had not matured. Mr. Russell then went to Prosper, Oregon, where the boat was being built. He found that the hull had been attached for $4038.50, and that there were clamorous creditors threatening other liens upon the property. The whole amount due he found to be $9178.30. According to Russell, Ross abandoned the contract and left the former nothing to do, if the boat was to be completed, but to settle the liens and to proceed with the work on behalf of his firm. While these claims were paid by checks drawn in favor of Ross, the checks were prepared in the presence of Ross and his creditors, and Ross immediately indorsed them and turned them over to the various claimants. Ross testified, speaking of the meeting with Russell, in part as follows:—

"Q. And you told him, did you not, that you could not complete the boat?

"A. I certainly did. I was willing to complete the boat but I did not have the means with which to do it.

"Q. Then you did abandon your contract?

"A. I was obliged to abandon my contract. I did abandon my contract. I could not do otherwise as I did not have the money to pay the liens then on the boat and the other claims on which liens were threatened, nor did I have any money with which to complete the boat."

After Russell went to Oregon and took charge of the further construction of the vessel, no more payments were made to Ross, but checks were drawn by plaintiffs in favor of those who furnished material and labor for the completion of the hull. This appears from uncontradicted testimony. Ross remained, without compensation, to direct the work, but no money passed through his hands and no sum was paid out by him after he declared his abandonment of the contract.

It will be seen from the above discussion that the jury was compelled to pass upon a question presented by conflicting evidence. We cannot say as matter of law that the transaction between the plaintiffs and Messrs. Foard & Anderson amounted only to subterfuge whereby plaintiffs really made untimely payments to Ross. On the contrary, the taking of

the notes and the collection after suit of the one thousand dollars might have indicated to the jurors that plaintiffs were merely accommodating Foard & Anderson who had an interest in helping Ross to construct the vessel under the terms of the contract.   While the written declarations of the plaintiffs and other circumstances might properly form the basis for a different decision upon this point, we cannot usurp the function of the jury and say that their conclusion was not supported by the weight of evidence.   It is not within our province to determine which testimony is true and which is false.   (*Casey* v. *Leggett,* 125 Cal. 664, [58 Pac. 264].)   If there is any evidence fairly tending to support the determination of a question of fact we are bound by it.   (*McMullin* v. *McMullin,* 140 Cal. 112, [73 Pac. 808].)

The jury having found that no premature payments were made by the plaintiffs to the builder and that the latter abandoned his contract, leaving the hull unfinished, it is not necessary for us to determine whether or not a premature payment to the contractor in a case like this would necessarily amount to a breach of conditions sufficient to exonerate the surety. Respondents present authorities sustaining the proposition that not every advancement made to a contractor by the person for whom he is erecting some structure under an agreement providing for installments of the agreed price at different stages of the work, amounts to a violation of the contract whereby the surety is relieved of all liability.   Among the cases cited are *Bateman Bros.* v. *Mapel,* 145 Cal. 241, [78 Pac. 734] ; *Hampton* v. *Christensen,* 148 Cal. 729, [84 Pac. 200] ; *Monroe* v. *Nat. Surety Co.,* 47 Wash. 488, [92 Pac. 281].   The learned judge of the superior court in this case, however, instructed the jurors that if the plaintiffs made any payments to Ross prior to the time the same became due under the terms of the contract, such payments had the effect of releasing the Pacific Surety Company from all liability under the contract, and in such case the jury should find a verdict in favor of the Surety Company.   The case having been tried upon the theory that any prepayment would have relieved the Surety Company from the duty of indemnifying the plaintiffs in any sum, and having been decided adversely to the litigant who contended for the correctness of that theory, the question whether the rule announced in *County of Glenn* v. *Jones,* 146

Cal. 518, [80 Pac. 695], should be applied in all strictness, or a more liberal doctrine should prevail in the case at bar, becomes purely academic.

Before the contract was abandoned by Ross the Russell & Rogers Company had paid him under the contract fifteen thousand dollars. This sum would have doubtless been almost, if not quite, a total loss to them if they had done nothing at that time, because the claims against the vessel aggregated more than nine thousand dollars, and it would indeed be remarkable if the incompleted hull would bring anything like its cost at a forced sale. Under the circumstances the most economical thing, both for the plaintiffs and the Surety Company, was the completion of the work by the firm of Russell & Rogers Company. It was the duty of plaintiffs to make the loss as light as possible. (*Winans* v. *Sierra Lumber Co.*, 66 Cal. 65, [4 Pac. 952].) Upon the failure of Ross to complete the contract and the refusal of the Surety Company to have anything to do with the matter, it was clearly the right of plaintiffs to do the work themselves. (1 Sutherland on Damages, sec. 91; *Bryant* v. *Broadwell*, 140 Cal. 490, [74 Pac. 33].)

There is no merit in the contention that because Ross remained as foreman without salary, a new contract superseding the old was made with him. Ross, as we have seen, was a mere volunteer. If he had chosen at any time to leave the place there was not even such an agreement as would give Russell & Rogers Company the right to demand damages for any loss consequent upon such desertion.

From the foregoing it follows that the judgment and order from which appeal is taken should be affirmed, and it is so ordered.

Angellotti, J., Henshaw, J., Lorigan, J., and Shaw, J., concurred.

Rehearing denied.