[S. F. No. 2967.    Department Two.—November 5, 1904.]

## BATEMAN BROTHERS, Appellants, v. E. T. MAPEL, and AMERICAN SURETY COMPANY OF NEW YORK, Respondents.

PRINCIPAL AND SURETY—CONTRACT FOR SPECIFIED MATERIALS FOR BUILD-ING—TOTAL BREACH—DAMAGES—EXCESS OF PRICE—LIABILITY OF SURETY.—Upon the total breach of the bond of a materialman to supply specified materials to building contractors according to the plans and specifications of the architects and to their satisfaction, the surety company is liable in damages to the extent of the bond for the excess of price which the building contractors were compelled to pay for the materials contracted for above the contract price.

ID.—INSUFFICIENT DEFENSE—MONEY ADVANCED TO PRINCIPAL—SURETY NOT INJURED.—It is not a sufficient defense by the surety to an action on the bond for such damages that the building contractors, without the previous approval of the architects, and without the knowledge of the surety, advanced large sums of money to the principal for the purpose of enabling him to purchase satisfactory materials of the kind contracted for, which he failed to do, where the surety was not injured thereby, and no part of the money so advanced was sought to be recovered from the surety.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.    John Hunt, Judge.

The facts are stated in the opinion of the court.

Sullivan & Sullivan, for Appellants.

Whitworth & Shurtleff, and Charles A. Shurtleff, for American Surety Company, Respondent.

HENSHAW, J.—This action was prosecuted by plaintiffs against the defendant Mapel, as principal, and the defendant American Surety Company of New York, as surety, for the sum of two thousand dollars, damages sustained by plaintiffs by reason of defendant Mapel's breach of a contract between himself and the plaintiffs, for the due performance of which contract the American Surety Company became responsible as surety. The action was tried against the Surety Company alone.

Mapel had entered into a contract with the plaintiffs to supply the latter at the site of the Hall of Justice building in San Francisco "all the terra cotta, ornamental pressed brick, and fireproofing of said Hall of Justice building, in accordance with the plans and specifications of same, and to the satisfaction of Messrs. Shea & Shea, architects." Bateman Brothers agreed to make payments to Mapel of "ninety per cent of the value of the materials as per this contract, delivered at said Hall of Justice, conditioned that materials are satisfactory to said Messrs. Shea & Shea, architects." The contract also contained the following clause: "It is hereby further agreed that said Bateman Brothers, if they desire, may make payments to said E. T. Mapel in advance of delivery of the said materials before mentioned to be furnished to them, and said E. T. Mapel agrees to accept such payments as part payments on this contract."

The undisputed facts are, that Mapel failed to manufacture and deliver any material. He was experimenting in his kilns and factories, but the product of them was unsatisfactory and unacceptable. To aid him in his endeavors to produce satisfactory material, Bateman Brothers advanced him moneys from time to time to the total amount of some seven thousand dollars. Mapel's efforts thus ending in a failure, plaintiffs were obliged to buy the material in the open market, and did so buy it, at a loss over the contract price of many thousands of dollars. The gravamen of their action is found in paragraph 7 of their complaint: "That by reason of the failure of said Mapel to deliver said materials mentioned in said contract, and to perform said contract, plaintiffs were obliged to purchase said materials elsewhere, and were compelled to pay and are now obliged to pay for said materials mentioned in said contract, and agreed to be delivered by said

Mapel, an amount more than $2,000 in excess of the prices mentioned in said contract." This allegation is fully supported by the evidence, and the court finds it to be true.

The surety company set up many defenses, upon one of which the court found in its favor. This defense was to the effect that Bateman Brothers had paid to the defendant Mapel this sum of seven thousand dollars prior to the delivery by Mapel of any material, "without first or ever obtaining from Messrs. Shea & Shea, architects, as in and by said contract required, a declaration or expression of acknowledgment upon their part that the materials prepared and manufactured by the said E. T. Mapel under said contract prior to the dates of said payment and payments were satisfactory to them, the said Shea & Shea." Mapel, it appears, had conveyed to the surety company property of the value of four hundred and fifty dollars to indemnify it. Judgment for this amount was rendered in favor of the plaintiffs, but they were refused further relief. It thus appears that, in the view of the court, the moneys so advanced by plaintiffs to Mapel without the knowledge of the surety company were construed to be moneys advanced in violation of the terms of the contract and in impairment of the surety's rights, and that the surety was thus exonerated, excepting for the value of the indemnifying property of the principal which it held in its possession. The briefs in this case are devoted largely, if not wholly, to the proper construction of the contract in this regard, but in the view which we take of the case that construction is wholly immaterial, although it may be said that it was properly construed by the court. The contract contemplated the privilege to the plaintiffs to pay at their pleasure in advance of delivery, but the condition as to approval by the architects was not waived. It was still required that the material should be acceptable to the architects before such payment was justified under the contract.

But, as we have said, this determination is immaterial and quite inconclusive of the case. If the payments were made within the terms of the contract, then clearly the surety cannot be heard to complain. If they were not, then they were merely advancements of money made by plaintiffs to defendant Mapel entirely without the terms of the contract, and the surety has no grievance, unless in some substantial

way his condition is changed or a new liability is sought to be imposed upon him because of such payments.

"A surety has all the rights of a guarantor, whether he become personally responsible or not." (Civ. Code, sec. 2844.)

"A surety is exonerated—1. In like manner with a guarantor; 2. To the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security." (Civ. Code, sec. 2840.)

"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended." (Civ. Code, sec. 2819.)

It is of course well recognized that the surety is favored in law, and that any act injurious to his rights will operate as an exoneration under his contract. Sutherland thus expresses it: "A surety is a favorite of the law, and where any act is done by the obligee that may injure him, the courts are very glad to lay hold of it in his favor. If the creditor does any act injurious to the surety, or inconsistent with his rights, . . . he will be discharged." (3 Sutherland on Damages, 3d ed., sec. 735.)

Thus the question whether the advancements made by Bateman Brothers were or were not within the strict terms of the contract could only affect the surety if in fact they were improperly made, and if a recovery was sought against the surety because of them, or because of some other change in its condition because of them. But such is not this action. Plaintiff does not plead the payments. He bases no claim for a recovery upon them, and the surety can avail himself of them to defeat a recovery only if the making of them has prejudiced him, or if the making of them has altered the original obligation of the principal in some respect, or if thereby the remedies or rights of the creditor or of the surety against the principal have become in some way impaired or suspended. Such is not the case here presented. So far as the contract is concerned, since no material was delivered

by Mapel, and no material had been accepted by the architects, there were no payments to be made, and the payments which were made were mere voluntary loans to Mapel, the better to enable him to perform his contract. These advancements did not injuriously affect the rights of the surety, nor did they affect them at all. At the utmost, it was but a transaction outside of the contract to the benefit of both Mapel and his surety, in that it supplied the former with money by which he could complete his contract, if it were possible for him to do so at all. So, as we have said, if a recovery were here sought against the surety because of these advancements, he might well be heard to say that he was not responsible therefor, and was exonerated under his bond, because they were not made in accordance with its terms. And such were the precise facts in *United States* v. *Tillotson,* 1 Paine, 305. In that case the United States had advanced to its contractors large sums of money to aid in the construction of a fort, under a contract providing restrictions and limitations in the payment of the money, to the effect that materials should be delivered with the invoices at the fort and pronounced by the engineer of proper quality, and that payments should be made at the end of each month for the work actually performed. The United States sued the surety upon his bond, alleging that of the large advancements so made the contractors had accounted in work and material for but a very small sum, and the recovery was sought for the difference between the amounts so advanced by the United States and the amounts accounted for by the contractors. But it was made to appear that the payments by the United States were without the terms of the contract, and under the plainest principles of suretyship it was held that the limitations as to payment ran with the surety's contract, and that they were exonerated as to all payments made not in accordance with these limitations and conditions. So here, as has been said, if the recovery were sought for the seven thousand dollars so advanced, the materials for which were not furnished, the surety could rightfully claim his exoneration. But such is not this action. The surety has not been injured by these payments, and a recovery is not sought on account of them. The case in effect is, that notwithstanding the liberality of the plaintiffs in advancing moneys to enable the contractor

to furnish the materials, he still failed to do so, compelling plaintiffs to purchase the materials in open market, and for the difference between the contract price and the price paid in open market the surety is responsible to the extent of his undertaking.

It follows, therefore, that the alleged defense is not a defense to the action, and that upon the facts found plaintiff is entitled to the judgment prayed for. It is therefore ordered that the judgment appealed from be reversed, and that upon the findings made the court enter its judgment in favor of plaintiffs.

McFarland, J., and Lorigan, J., concurred.

Hearing in Bank denied.