[Civ. No. 1735. Third Appellate District.—October 23, 1917.]

# H. SILBERSTEIN, Appellant, v. R. S. KITRICK et al., Respondents.

PRINCIPAL AND SURETY—BUILDING CONTRACTOR'S BOND—VIOLATION OF DUTY TO WITHHOLD PAYMENTS—RELEASE OF SURETIES.—Sureties on the bond of a building contractor are discharged from liability by the owner's failure to comply with his duty, under section 1184 of the Code of Civil Procedure, to protect the sureties by withholding payment of unpaid installments, where notices to withhold were served upon him as provided by said section.

APPEAL from a judgment of the Superior Court of Butte County, and from an order denying a new trial. H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

Charles J. Heggerty, and W. H. Carlin, for Appellant.

A. F. Jones, and George F. Jones, for Respondents.

CHIPMAN, P. J.—The action is to recover from defendants the sum of ten thousand dollars on a bond given by them for that amount as sureties of the Burnight-Kennedy Company, a corporation, which had entered into a contract with plaintiff to erect a building in the city of Chico. The cause was tried by the court without a jury and defendants had findings and judgment in their favor. Plaintiff appeals from the judgment and from the order denying his motion for a new trial. The contract price for the building was forty-one thousand five hundred dollars, to be paid by progressive payments, as follows:

"First—The sum of two thousand ($2000) dollars when all excavation is completed and the walls are up ready to receive first or street floor joists.

"Second—The sum of twenty-nine thousand one hundred ($29,100) dollars from time to time as the work progresses, from the date of the first payment until the completion of the building; said sum of $29,100 to be paid in the sums of $2000 each, when labor and material have been performed and placed in the building, exceeding said several sums by 25 per cent.

Each payment shall be a stop or rest, and the next payment of $2000 to be made when an additional amount of labor and material has been performed and furnished 25 per cent in excess of the payment to be made. After thirteen payments of $2000 have been made and upon the final completion and delivery of the building the sum of $31,000 shall be made, and the balance and last payment of the contract price, to-wit, the sum of $10,400 shall be made thirty-six (36) days after the completion and delivery of the building.''

By appropriate averments in their answer, defendants sought to have corrected an obvious ambiguity or mistake in the latter part of clause ''Second,'' which provided for a completion payment of thirty-one thousand dollars, so as to read thirty-one hundred dollars, and the court, on sufficient evidence, found that it was the intention of the parties that this payment should be thirty-one hundred dollars. Thus construed, payments should have been made as follows:

| | |
|---|---:|
| First payment ........................... | $ 2,000 |
| 13 $2000 payments ....................... | 26,000 |
| Completion payment ...................... | 3,100 |
| 36 days after completion payment.......... | 10,400 |
| | $41,500 |

The first payment of two thousand dollars was made on May 22, 1909, and at various times each month thereafter thirteen payments of two thousand dollars each were made, the last, or thirteenth, of date January 8, 1910. On January 22, 1910, there was a further payment made of two thousand dollars, which defendants claim was a premature payment and unauthorized. On March 16, 1910, the company quit work and ceased furnishing materials, leaving the building unfinished, and plaintiff took possession and completed the work on April 14, 1910, at a cost to him of $885.31 for labor and material, and on April 15, 1910, he filed notice of completion in the county recorder's office.

As the work progressed, the architect named in the contract issued and delivered to the company certificates upon account of materials used and labor performed, and plaintiff paid to the company on said certificates up to and including the payment of January 22, 1910, the total sum of thirty thousand dollars. The contract provided, among other things, as pointed out by appellant, that in each case of payment

under the contract a certificate was to be "obtained and signed by the said A. J. Bryan, architect"; that "should any dispute arise respecting the meaning of the drawings or specifications, the same shall be decided by A. J. Bryan, architect, and his decision shall be final, but should any dispute arise respecting the value of the extra work or works omitted" the dispute was to be arbitrated; that "all payments shall be made upon the certificates of the architect, and this contract is completed and the work is finished in accordance with the original plans and such modifications or alterations as may be made therein. The owner is to make payments promptly and upon the certificate of the architect." No other powers of the architect appear at all pertinent to any issue here, so far as we can discover. The bond made reference to the contract and among the provisions of the bond relating to the obligation of the sureties were the following:

"Now, therefore, if the said Burnight-Kennedy Company shall pay for all materials and supplies furnished for the performance of the work so contracted to be done and pay for all labor done and to be done of every kind and to complete and finish said building within the time named and according to the plans and specifications, then this obligation shall be void, otherwise the sureties herein will pay the same to the amount specified in said bond.

"It is further stipulated and a portion of this bond, that the said Burnight-Kennedy Company shall complete and turn over to the said H. Silberstein said building free and clear of all claims, liens or demands of any person, contractor, subcontractor, material men, laborers, etc., and in the event of the failure to do so, then the sureties on this bond are held as herein specified."

The court found that the payment of two thousand dollars made January 22, 1910, was a premature payment, "and should not, under the terms of the contract entered into between H. Silberstein and Burnight-Kennedy Company, have been made until the final completion and delivery of the building to plaintiff and the acceptance of said building by him; that said payment was made without the knowledge or consent of the defendants, R. S. Kitrick and Harry Jacoby, or either of them." The court also found that certain corporations and partnerships served notice under section 1184 of the Code of Civil Procedure, "which notices were in proper

form, to withhold the amounts named in said notices from
the payments due under said contract, or to thereafter become
due to said Burnight-Kennedy Company.'' These claims
aggregated $7,573.70, as follows:

Diamond Match Company, notice served September
    15, 1909 ...............................$5,617.10
Wygant & Collins, notice served December 26, 1909. 1,751.20
Chico Con. Co., notice served January 4, 1910......  205.40

The court found that without the knowledge or consent of
defendants, plaintiff paid to the company ''large sums of
money which, under the laws of the state of California, it
was his duty to withhold,'' namely, after September 15, 1909,
on which date the Diamond Match Company served its notice,
plaintiff paid to the contracting company fourteen thousand
dollars, as appears above. After the date of the Wygant &
Collins notice, the sum of four thousand dollars was paid by
plaintiff to the company, and a like amount was paid after
the notice of the Chico Construction Company was served.
The court found: ''That the plaintiff failed to withhold any
sums of money coming due after the services of any of said
notices, except the sum of one thousand one hundred dollars,
the balance of the completion payment, and the sum of ten
thousand four hundred dollars, the thirty-five day payment,
neither of which sums were due under the terms of said con-
tract until the final completion of said building.''

As conclusions of law, the court found that ''defendants,
and each of them, are discharged from all responsibility and
liability as sureties,'' and that they are entitled to a dismissal
of the action and to recover their costs herein.

Defendants interposed two defenses to the action: First,
that the completion payment of two thousand dollars, Janu-
ary 22, 1910, was premature, the building not then having
been completed, and, as such payment, released defendants
from liability on their bond. Second, that the failure of
plaintiff to withhold sufficient money to pay the claims above
set forth, after receiving notices to withhold under section
1184 of the Code of Civil Procedure, worked defendants'
release from liability.

The contention of appellant as to the payment of January
22, 1910, is that it was not a premature payment under the
construction given the contract by the architect, which was
that the contract called for fourteen payments of two thou-

sand dollars each as the work progressed besides the first pay-
ment, making fifteen payments before coming to the comple-
tion payment of three thousand one hundred dollars (or, as
erroneously stated in the contract, thirty-one thousand dol-
lars). In other words, that he was authorized to give cer-
tificates for twenty-nine thousand one hundred dollars plus
the first payment of two thousand dollars. making thirty-one
thousand one hundred dollars, and that in giving certificates
for thirty thousand dollars he was acting in accordance with
his construction of the contract.

Witness Burnight, one of the company's officers, testified
that the last payment to be made upon completion of the
building was to be three thousand one hundred dollars, to
which the fourteen two thousand dollar payments and the
ten thousand four hundred dollars reserved for thirty-six
days being added would make the contract price of forty-one
thousand five hundred dollars. Appellant contends that the
contract was susceptible of two different constructions by
reason of its ambiguity, and that whether or not the archi-
tect properly construed the contract, he was made sole arbiter,
and having given his certificate, it is conclusive, and respond-
ent cannot now attack it. We do not think that the power
given the architect was broad enough to authorize him to
misconstrue the contract and conclude the sureties by such
misconstruction. The ambiguity, if any, was caused, no
doubt, by the mistake in making the final completion pay-
ment thirty-one thousand dollars instead of three thousand
one hundred dollars, but it seems clear enough that but thir-
teen payments of two thousand dollars, in addition to the
first payment of two thousand dollars, were to be made, which
was the extent of the progressive payments authorized by
the contract, and that the court was justified in holding the
payment of January 22, 1910, to have been prematurely made.
We do not think that the payments made upon the architect's
certificate were so far conclusive as to have justified plaintiff
in entirely disregarding the withhold notices. On the con-
trary, we think he made such payments at his peril. How-
ever this may be, there is no dispute but that payments were
made to the contractor, as shown above, after notices had been
served on the owner to withhold payment under section 1184
of the Code of Civil Procedure and in plain violation of its
provisions. It is true that the lien claimants brought action

and recovered judgment against the plaintiff herein (*Diamond Match Co.* v. *Silberstein*, 165 Cal. 282, [131 Pac. 874]), and, as we are told, this judgment has been satisfied. As claimed by appellant, his duty to the creditors was thus fully discharged, but does it follow, as seems to be further claimed, that the sureties were not relieved?

A surety cannot be held beyond the express terms of his contract (Civ. Code, sec. 2836); he has all the rights of a guarantor (Id., sec. 2844), and is exonerated in like manner with a guarantor to the extent to which he is prejudiced by any act of the creditor which would naturally prove injurious to the remedies of the surety or inconsistent with his rights or which lessens his security (Id., sec. 2840). A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended (Id., sec. 2819).

*County of Glenn* v. *Jones*, 146 Cal. 518, [80 Pac. 695], was an action against the contractor, Jones, and his sureties. Jones had contracted to furnish the necessary materials and erect a high school building for the sum of $5,580, to be paid as follows: one thousand eight hundred and sixty dollars when Jones shall have delivered all the material for said building on the building site; $1,860 when the roof is on; and the balance, $1,860, on full completion and acceptance of the building. He delivered a portion of the building materials and upon application, and without the sureties' consent, was paid by the board of supervisors the first payment of $1,860. He pocketed the money, abandoned the contract, and left the materials unpaid for. The question presented was, Did the premature payment made by plaintiff release the sureties? Of the duty of the creditor, the court said: "The contract of suretyship imports entire good faith and confidence between the parties as to the whole transaction. The creditor is bound to observe good faith with the surety. He must withhold nothing, conceal nothing, release nothing, which will possibly benefit the surety. He must not do any act injurious to the surety or inconsistent with his rights. He must not omit to do any act required by the surety which duty enjoins him to do if such omission injures the surety. The liability

of a surety is not to be extended beyond the terms of his contract. To the extent and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further. He has a right to stand on its very terms." Speaking of the contract, the court said: "In this case the sureties agreed and guaranteed that Jones would place all the materials on the building site, on condition that he was to receive no money until he had done so; they did not agree that if paid in advance he would place such materials on the site. By the payment, the hope of reward for further performance was lost, the temptation to act dishonestly was increased." The sureties were held to have been exonerated.

*Keissig* v. *Allspaugh,* 91 Cal. 231, [13 L. R. A. 418, 27 Pac. 655], was also an action against the contractor and a surety on his bond. At the completion of the building there were certain liens upon it, notwithstanding which the owner paid the completion payment and the contractor failed to discharge the liens. The owner was compelled to pay these lien claims and he brought the action to recover from the principal and surety. In holding that the surety was discharged, the court said: "The judgment cannot be sustained upon the facts. The appellant, Lundeen, was a surety, and as money sufficient to satisfy all of the liens mentioned in the complaint was, or ought to have been, in the hands of the plaintiff at the time of his settlement with the contractors, he should have so applied it, instead of paying it to the contractors. This balance was to be retained in his hands as an additional security against liens upon the building, and in equity, he held the same also for the benefit of the sureties. It was a special fund to which they had a right to look for their indemnity, and in view of which it must be supposed that they assumed the obligation of sureties, as the original contract is referred to in the bond as the inducement or consideration for its execution, and the plaintiff was not authorized to surrender it without their knowledge or consent; and having done so, the appellant was discharged. (*Bragg* v. *Shain,* 49 Cal. 131; *Taylor* v. *Jeter,* 23 Mo. 244.)" In speaking of the failure of the plaintiff to retain this balance or apply it to the satisfaction of the obligation for which the appellant was surety, the court said: "The neglect to resort to a fund already in his hands for his own protection in the very matter

35 Cal. App.—7

for which the defendant was a surety, and which fund was therefore charged with a trust in favor of appellant, and its surrender without his consent constitutes a defense to this action.'' It is true that in this case was involved the final payment of twenty-five per cent of the contract price which, by the terms of the contract, was to be reserved. The contract in the present case also reserved a twenty-five per cent final payment, and it is silent as to the duty of plaintiff where so-called ''stop notices'' are filed under section 1184 of the Code of Civil Procedure. But the statute defines the duty of the owner where such notices are given and the owner is charged with knowledge of the statute. It was clearly his duty to protect the sureties by withholding payment of unpaid installments, failing in which he was guilty of an act ''which would naturally prove injurious to the remedies of the surety or inconsistent with his rights.'' For the sureties' protection, the statute must be read into the contract and be deemed to operate as fully as the written provision in the contract respecting the final payment.

In the Diamond Match Company case, *supra,* the court said of section 1184: ''It is the clear duty of the owner under service of such a notice to withhold from the moneys due, or from the moneys that may become due, a sum sufficient to protect him against the demand of the notice. If he does not do this, he becomes justly liable under later notices to withhold which may be served upon him.'' As to the nature and effect of such a notice, a full discussion will be found in the cases cited in the Diamond Match Company case. (See, also, *Sweeney*, v. *Board of Trustees,* 33 Cal. App. 331, [165 Pac. 42].)

Respondents point out what appears from the record, that had appellant complied with the law as laid down in the Diamond Match Company case and with the strict terms of his contract, he would have had at the completion of the contract to pay lienholders and materialmen who had given withhold notices the sum of $21,073.70. The total judgment given against him in said case was $19,025.81, leaving in his hands a balance of $2,047.89, out of which there remained only to be paid $885.31, the cost of completing the building. He now seeks to recoup the loss occasioned by his failure to observe his duty toward respondents as sureties. We think

they were by his acts entirely exonerated from all liability under their bond.

The judgment and the order are affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 20, 1917.