[Civ. No. 2828. Third Appellate District.—May 11, 1925.]

JOHN L. MAZZERA, Respondent, v. W. C. RAMSEY et al., Appellants.

[1] MECHANICS' LIENS — ACTION AGAINST SURETIES — PLEADING. — In this action by the owner against the sureties on a bond given in connection with a building contract, the complaint showing the terms and conditions of the contract, the terms and conditions of the bond sued upon, the abandonment of the work by the contractor, the completion of the work by the sureties, and the payment by the owner to discharge labor and material claims of a sum which, added to the amount paid to the contractor and the sureties, exceed the contract price, stated facts constituting a cause of action against the sureties.

[2] ID.—CONDITIONS OF BOND—LIMITATION OF LIABILITY.—Where the bond executed in connection with a building contract is not conditioned as provided in section 1183 of the Code of Civil Procedure, liens for labor and materials are not limited to the amount due from the owner to the contractor.

[3] ID.—RIGHT TO LIEN—CLOUD ON TITLE—PAYMENTS OF CLAIMS BY OWNER—RIGHT TO REIMBURSEMENT BY SURETIES.—Whether the right of a mechanic or materialman to a lien, during the time within which he may file but has not filed a claim of lien, be treated as a lien, a potential lien, or merely a right to a lien, it constitutes a cloud on the owner's title; and where the sureties on a bond executed in connection with a building contract under-

--------

1. See 17 Cal. Jur. 177.
3. See 17 Cal. Jur. 79; 23 Cal. Jur. 1097.

take the completion of the building under their contract of surety-ship, they are under legal obligation to pay mechanics and mate-rialmen and to deliver the building to the owner free from liens, and if the owner pays such mechanics and materialmen, with the knowledge and consent and at the instance and request of the sureties, the owner is entitled to recover the amount so paid from the sureties.

[4] ID. — ABANDONMENT OF WORK — COMPLETION BY SURETIES — PAY-MENTS BY OWNERS—CONSENT OF SURETIES—WAIVER OF OBJECTIONS.—Where the contractor abandons the work, and the sureties undertake the completion thereof, and all payments thereafter made by the owner to mechanics and materialmen are made with the knowledge and consent of the sureties, and at their special instance and re-quest, in an action by the owner against the sureties to recover the amount paid by the owner in excess of the contract price, no ques-tion can arise as to the validity of the claims paid or as to the reasonableness thereof.

[5] ID.—LIABILITY TO OWNER—CONSTRUCTION OF BOND.—Where the bond executed in connection with a building contract, after pro-viding that the sureties are bound to the owner, his executors, administrators, and assigns, continues as follows: "to be paid, his executors, administrators and assigns," it is patent that the omis-sion of the word "owner," or the owner's name, in the latter clause is a mere clerical error, which in no manner affects the liability of the sureties to the owner—in fact, the whole of such clause might have been omitted without affecting their liability.

[6] ID.—COMPLETION OF WORK BY SURETIES—VALIDITY OF BOND RECOG-NIZED.—Where the sureties on a bond given in connection with a building contract, upon the abandonment of the work by the con-tractor, undertake the completion of the building, thereby prevent-ing the owner from finishing the work, they recognize the validity of their bond and they may not be heard, after they have com-pleted the building and after it has developed that the costs ex-ceeded the contract price, to assert the invalidity of the bond.

[7] ID.—DELAY IN PAYMENTS—ABANDONMENT OF WORK—RELEASE OF SURETIES.—The fact that the owner did not make the second pay-ment under the contract to the contractor on his demand, did not release the sureties on the bond executed in connection with said contract, where the contractor later received such payment, which was turned over to the sureties, and the contractor did not abandon the work because of the owner's failure to make such second pay-ment, and the sureties, following the abandonment of the work, took charge thereof and were paid the three subsequent installments according to the terms of the contract.

[8] ID.—PREMATURE PAYMENTS—CONSENT OF SURETIES—ABSENCE OF PREJUDICE.—The fact that the owner paid the contractor a specified sum of money several days before the first payment was due did

not release the sureties from their obligation where they were present and consented to such payment; and such premature payment would not constitute any defense to an action against the sureties, where it was used to pay for labor and materials furnished during the first week's work under the contract, and the contractor continued the work until the first and second payments under the contract became due, and the amount thereof, less the premature payment, was duly paid, and thereafter the sureties continued the work and received subsequent payments.

---

(1) 40 **C. J.**, p. 363, n. 16.   (2) 40 **C. J.**, p. 353, n. 96.   (3) 40 **C. J.**, p. 358, n. 10.   (4) 40 **C. J.**, p. 358, n. 10.   (5) 40 **C. J.**, p. 354, n. 8.   (6) 40 **C. J.**, p. 354, n. 4.   (7) 32 **Cyc.**, p. 177, n. 67.   (8) 32 **Cyc.**, p. 177, n. 67.

APPEAL from a judgment of the Superior Court of San Joaquin County. C. W. Miller, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. H. Carpenter and Frank W. Sawyer for Appellants.

Gumpert & Mazzera for Respondent.

FINCH, P. J.—The plaintiff, as owner, and George Balliet, as contractor, entered into a building contract containing the following provisions material to the determination of this appeal:

"Whereas, the said owner is desirous that the hereinafter mentioned one story bungalow building No. 841 be built, erected and fully completed for the sum of . . . $7,516.50, free and clear from all liens and claims of liens, and of any and every other claim and demand . . . and

"Whereas, the said contractor with knowledge of the premises, is ready, able and willing to furnish all labor and materials and to do and fully perform all work essential and proper in such complete performance and completion of the said building for the sum of . . . $7,516.50 subject to the covenants and conditions hereinafter contained and in consideration of the premises.

"Now it is hereby agreed: 1st: That the contractor will at his own charge and cost and within five days from the date hereof, begin and continuously prosecute and perform the said work in a thorough and workmanlike manner and

fully complete the same all according to the intent and meaning of the plans, drawings and specifications referred to in this contract . . . for the sum of . . . $7516.50. . . . 5th: . . . The sixth payment to be made in the sum of $1879 when building is accepted by architect and owner, and all vouchers are presented by contractor pertaining to the payment of all labor and materials for said building, otherwise the owner reserves the right to wait for thirty-five days after acceptance of said building before making the final payment to contractor. 7th: . . . Should the contractor at any time during the progress of the work refuse, fail or neglect without the fault of the owner to supply a sufficiency of materials or workmen to complete this contract expeditiously or any lawful extension thereof for a period of more than three days after having been notified by the said owner, the owner shall have power to furnish at market rates, material or workmen to finish the said work, and the cost thereof shall be deducted from the amount of such contract price, and if such costs exceed such price, said excess shall within two days be paid to the said owner.''

The contract provided for partial payments as the work progressed, to be made upon presentation of the architect's certificates. A bond for the faithful performance of the work by the contractor was given in the following form:

''Know all men by these presents, that we, the undersigned, W. C. Ramsey and T. F Emerson, . . . are as sureties and guarantors, held and firmly bound jointly and severally by these presents unto John Mazzera as owner. His executors, administrators and assigns in the sum of three thousand seven hundred and fifty-eight dollars and twenty-five cents . . . to be paid, his executors, administrators and assigns jointly and severally by these presents, . . . The condition of the above obligation is such that (here follow recitals to the effect that the contract was executed; that a copy thereof is attached to the bond; that the ''contract was entered into upon the express consideration that the full and specific performance thereof should be secured and insured by this bond''; that it ''is a bond of indemnity''; and that the contract and the plans and specifications are made a part of the bond). Now, therefore, if the above George Balliet shall well, faithfully and specifically perform the said contract, and hand over to the said owner said

work therein mentioned, within the time therein specified, full, completed and in a clean condition and free and clear of liens as thereby required, and in entire accordance with all of the terms thereof, then this obligation to become null and void, otherwise to remain in full force and virtue."

The contract, plans, and specifications and the bond were recorded the same day that the contract was executed. A few days later the contractor entered upon the performance of the work and continued therein until the architect's certificate was issued showing that the second payment was due, at which stage he abandoned the contract. The sureties then undertook the completion of the building. A few days before it was finally completed, the work remaining to be done not appearing from the record, the men employed by the sureties in the construction of the building quit work. The plaintiff induced the men to return and complete the building by promising them to "see they got their money." It was stipulated at the trial that the building was finally "completed according to the plans and specifications."

The final payment of $1,879 was not made to the contractor or to the sureties, but the plaintiff paid the amount thereof and the sum of $1,879.02 additional in the discharge of claims for labor and material in the construction of the building which the contractor and the sureties failed and refused to pay. No claims of lien were ever filed against the building and such payments for labor and material were made by the plaintiff before the expiration of the time within which liens might have been filed. The complaint alleges and the court found that the plaintiff made such payments "with the knowledge and consent of defendants W. C. Ramsey and said T. F Emerson, and at their instance and request." Emerson died after the payments had been made by plaintiff, and the executrix of his estate is made a party defendant. A claim against his estate for the amount of such payments was duly presented to the executrix and disallowed. The plaintiff was given judgment for the amount of all claims paid by him and defendants have appealed.

[1] Appellants contend that their demurrer to the complaint should have been sustained. The foregoing facts, together with much evidentiary and unnecessary matter, are alleged in the complaint. That such facts constitute a

cause of action is so apparent that no discussion of the question is deemed necessary.

The most serious contention of appellants is that the payments made by plaintiff for labor and materials were voluntary. [2] Section 1183 of the Code of Civil Procedure, among other things, provides: "The liens in this chapter provided for shall be direct liens, and shall not in the case of any claimants, other than the contractor, be limited, as to amount, by any contract price agreed upon between the contractor and the owner except as hereinafter provided. . . . In case said original contract shall, before the work is commenced, be so filed (in the office of the county recorder), together with a bond of the contractor with good and sufficient sureties in an amount not less than fifty (50) per cent of the contract price named in said contract, which bond shall in addition to any conditions for the performance of the contract, be also conditioned for the payment in full of the claims of all persons performing labor upon or furnishing materials to be used in such work, and shall also by its terms be made to inure to the benefit of any and all persons who perform labor upon or furnish materials to be used in the work described in said contract so as to give such persons a right of action to recover upon said bond in any suit brought to foreclose the liens provided for in this chapter or in a separate suit brought on said bond, then the court must, where it would be equitable so to do, restrict the recovery under such liens to an aggregate amount equal to the amount found to be due from the owner to the contractor." The bond herein considered was not so conditioned, and it follows that liens for labor and materials were not limited to the amount due from the owner to the contractor. In *People* v. *Moxley,* 17 Cal. App. 466, 468 [120 Pac. 43], it is said: "The lien of a mechanic or materialman is a constitutional right and attaches to the structure as the material is furnished or labor performed. The statutory procedure enacted for the enforcement of such right has reference only to the remedy. It is true that if notices of lien be not recorded within the specified time, the lien is not enforceable. The lien, however, created by the Constitution, cannot be made subordinate to or dependent upon any legislative act. It exists with all of its force at all times between the furnishing of the material or the per-

forming of the labor, and the expiration of the time within which such notices of lien may be filed." In *Siegel* v. *Hechler*, 181 Cal. 187, 192 [183 Pac. 664, 666], where a claim for which a lien might have been filed was paid without its having been so filed, the court referred to the claim as "a potential lien upon the building." Section 1186 of the Code of Civil Procedure provides: "The liens provided for in this chapter are preferred to any lien, mortgage, or other encumbrance which may have attached subsequent to the time when the building, improvement, or structure was commenced, work done, or materials were commenced to be furnished." [3] Whether the right of a mechanic or materialman to a lien, during the time within which he may file but has not filed a claim of lien, be treated as a lien, a potential lien, or merely a right to a lien, it is clear that it constitutes a cloud on the owner's title. The sureties in this case, having undertaken the completion of the building under their contract of suretyship, were under legal obligation to pay mechanics and materialmen and to deliver the building to the owner free of liens. Under such circumstances, if the plaintiff paid such mechanics and materialmen, with the knowledge and consent and at the instance and request of the sureties, as found by the court, then the plaintiff is entitled to recover the amount so paid from the sureties, whether he would have had the right to so recover the same in the absence of such consent and request or not.

[4] After the contractor abandoned the work, Ramsey said "he did not know anything about the job, Emerson was taking care of that; whatever he did was all right." The evidence shows without conflict that Emerson acted for the sureties in the completion of the building. Emerson said that the sureties and the owner would "work along together and get it (the building) finished as soon as we could." About the time the building was completed the mechanics and materialmen were demanding payment of their claims and several of them were threatening to file liens therefor. The attorney for plaintiff made a demand upon Emerson that the sureties pay these claims. About the same time Emerson demanded payment of the last installment of the contract price, but plaintiff refused to make the payment without the production of receipts, as pro-

vided in the contract, "showing that all labor done and all
material furnished" had "been fully paid for." The at-
torney for plaintiff testified as follows: "I further told Mr.
Emerson, . . . 'Of course we will insist upon your liability
and Mr. Ramsey on the bond, and we are not going to dis-
miss you from liability on the bond. Now you know more
about that job than I do. Now we will have to work along
together on this proposition and see if we can't straighten
it out.' And he said, 'All right.' Then . . . I said, 'Now,
Mr. Emerson, you state that you paid out certain moneys,
and that there are certain receipts outstanding. Will you
bring up whatever receipts and vouchers that you have in
your possession, so that we will at least know the status of
the job?' He said he would. . . . He did not bring them
up. Porter Roberts brought them up. . . . Q. State whether
or not all the checks which are shown on the bill of particu-
lars of the complaint in this action were O. K.'d by T. F.
Emerson prior to the time they were paid. A. They were
all O. K.'d. . . . Before the checks were drawn out, or be-
fore they were signed and transferred, released, I made out
an O. K. for Mr. Emerson. . . . Q. Now, he O. K.'d them in
writing on the stubs with his initials? A. Most of them, yes.
. . . Q. And those he did not O. K. with his initials, he
O. K.'d verbally? A. He did. . . . Q. At the conversation
which has been referred to, . . . was there anything said
at that time relative to a deficiency? A. I told Mr. Emer-
son, . . . 'Now you understand that we will hold you liable
on your bond if there is any deficiency, you and Mr Ram-
sey, as sureties, will (have) to pay for it.' He says, 'Yes, I
know that, but I don't know what the deficiency is.' . . .
Mr. Emerson said, 'We do not want to quarrel about this
thing; we will settle this thing up without any difficulty.' "
The witness further testified that, before paying any of the
claims, he said in a conversation with Emerson and one of
the claimants, "Now, we are not going to admit any re-
sponsibility of paying these without we have Emerson's
O. K." It fairly appears from the foregoing evidence that
plaintiff made the payments in question pursuant to an
understanding between the parties that he should pay them
and that the sureties would be liable to him for the amount
thereof. It is therefore sufficient to support the finding of
the court to the effect that the payments were made with the

knowledge and consent of the sureties and at their instance and request. Since the claims were all approved by Emerson, as the representative of the sureties, no question can arise as to their validity or the reasonableness thereof.

[5] Appellants contend that the penalty of the bond is not made payable to the plaintiff but to his executors, administrators and assigns. It is true that the bond, after providing that the sureties are bound to the owner, his executors, administrators, and assigns in the sum of $3,-758.25, continues as follows: "to be paid, his executors, administrators and assigns." It is patent that the omission of the word "owner," or the owner's name, in the clause quoted is a mere clerical error which in no manner affects the liability of the sureties. That clause might be omitted altogether without affecting their liability. By the preceding parts of the bond the sureties expressly bound themselves to the owner in the amount of the penalty of the bond. It is not apparent in what manner the subsequent clerical omission referred to can be given the effect of unbinding them. All the terms of the contract are expressly made parts of the bond. On the abandonment of the work by the contractor the sureties undertook the completion of the contract. Emerson said that "he was going to handle the financial affairs, that Mr. Balliet and he agreed upon that"; that Balliet had left and "I am going to get the profit; Balliet will get none." The sureties, therefore were "in the situation of a surety on the contractor's bond, who undertakes to finish the contract work for his principal. 'When a surety, either corporate or individual, in pursuance of the terms of an undertaking, assumes the performance of the principal's contract, such surety, by being subrogated to the rights of the principal thereunder, must necessarily become subject to all the rights of the principal thereunder, must necessarily become subject to all of his liabilities.' (*Ausplund* v. *Aetna Indem. Co.*, 47 Or. 10 [81 Pac. 577, 82 Pac. 12]; *Hughes* v. *Gibson*, 15 Colo. App. 318 [62 Pac. 1037].)" (*Watterson* v. *Owens River Canal Co.*, 25 Cal. App. 247, 253 [143 Pac. 90, 93].) [6] By undertaking the completion of the building the sureties recognized the validity of their bond and prevented the owner from finishing the work. It does not appear whether the owner could have completed the building at less cost than that incurred by

the sureties but, since they did the work in pursuance of their rights under the bond and received the progress payments as they became due, they cannot now be heard to assert its invalidity. They are in the same position as if they had been the original contractors.

[7] Appellants contend that the sureties were discharged by reason of the refusal to make the second payment to the contractor on his demand. The contractor testified that the plaintiff refused to make the payment to him, 'but that the former had agreed that ''Emerson was to attend to the finances''; that later he received a check for the amount of the payment, which he indorsed to Emerson and that Emerson cashed it; and that he did not abandon the contract because of plaintiff's refusal to make the payment to the witness. The sureties took the complete charge of the work after the contractor abandoned it, and they were paid the third; fourth and fifth installments according to the terms of the contract. They were not released by plaintiff's refusal to pay the second installment to the contractor under the circumstances stated.

[8] The plaintiff paid the contractor $400 five days before the first payment was . due. It is urged that this released the sureties. Emerson was present when the payment was made and he said ''it was all right.'' The $400 was used to pay for labor and material furnished during the first week's work under the contract. The contractor continued the work until the first and second payments provided for in the contract became due, and the amount thereof, less the payment of $400, was duly paid. Thereafter the sureties continued the work and as stated the third, fourth, and fifth payments were made to them. The defendants did not plead that any payments were prematurely made, but their answer alleges ''that the said Ramsey and Emerson properly distributed and paid all the preceding five installments that were paid by plaintiff under said contract, toward the payment of the bills that had accrued up to the time of the payment of the said five several installments.'' Even if the premature payments had been pleaded, it would not be a defense, because, under the circumstances stated, the sureties were not prejudiced thereby. (*Bateman Brothers* v. *Mapel*, 145 Cal. 241, 244 [78 Pac. 734]; *Dunne Inv. Co.* v. *Empire State S. Co.*, 27 Cal. App.

208 [150 Pac. 405, 411].)    The other grounds urged for a reversal are covered by the foregoing discussion.

The judgment is affirmed.

McDaniel, J., *pro tem.*, and Hart, J., concurred.

Appellants' petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 7, 1925.

All the Justices concurred.