[S. F. No. 14188. In Bank.—November 30, 1931.]

PACIFIC COAST ENGINEERING COMPANY (a Corporation), Respondent, v. DETROIT FIDELITY AND SURETY COMPANY (a Corporation), Appellant.

John Ralph Wilson for Appellant.

George F. Snyder for Respondent.

THE COURT.—This is an appeal from a judgment for the plaintiff in an action on a contractor's surety bond.

On November 25, 1925, the plaintiff entered into a contract with one Worswick whereby the latter agreed to furnish all the material and labor, etc., for the erection and

field painting of the structural steel for the Sacramento memorial auditorium, which the plaintiff was under obligation as the general contractor to complete. On the same date the defendant wrote its bond to the plaintiff for the faithful performance of the contract on the part of its principal, Worswick. The contract between the plaintiff and Worswick provided that seventy-five per cent of the valuation of all work installed shall be paid monthly by the plaintiff upon presentation of certificates issued by Worswick. On January 14, 1926, and about ten days after commencement of the work, Worswick, being in need of funds wherewith to proceed with his contract, arranged to and did receive from the plaintiff, concededly without the defendant's knowledge or consent, the sum of $1,000 for which he gave to the plaintiff his demand note in that sum. In January and February, 1926, Worswick furnished steel and labor of the value of $1775.50, on which he had been paid other cash sums aggregating $650. Further payments had been refused by the plaintiff, although seventy-five per cent of the value of the work and material furnished had been demanded, on the ground that the advance of $1,000 had been applied to the payments due. On February 17, 1926, Worswick abandoned the contract. The plaintiff through its president then carried on negotiations with Worswick and his surety, the defendant, in a futile attempt to procure either one of them to complete Worswick's contract. On March 1, 1926, the following letter signed "Pacific Coast Engineering Company, by J. J. Coney, President", was sent to Worswick: "Inasmuch as you are in default in your performance of the agreement entered into between yourself and the undersigned, Pacific Coast Engineering Company, on the 25th day of November, 1925, for the erection of the steel work on the Sacramento memorial auditorium at Sacramento, and this default has continued for a period of more than ten days to our great damage, this will serve to notify you that your contract above mentioned is now terminated and cancelled." At the same time the plaintiff sent a letter to the defendant in which the following pertinent portions appear: "Pursuant to said agreement work was commenced by Worswick and continued by him until the 17th day of February, 1926, since which date he has ceased and failed to carry out the terms and provisions of said

contract, and is now in default thereunder. By reason of the terms above stated and in consequence of the position we occupy obligating us to carry out and complete the erection of the steel on this job we are compelled to notify you that we are this day advising Mr. Worswick that his contract is cancelled for his failure and delinquency in the performance of same and we shall proceed with the performance of the obligation undertaken by him thereunder. This notice is given to you to advise you of your status under your bond and we shall hold you responsible for your liability thereunder.''

The plaintiff completed Worswick's contract, expending a sum greatly in excess of the original contract price, and sued the defendant in this action on its bond. The trial court found among other things that prior to the abandonment by Worswick of his contract the plaintiff had paid to Worswick at least seventy-five per cent of the value of the work completed under the contract up to that time and the plaintiff had complied in all respects with its obligations under said contract; that the plaintiff, in accordance with the contentions, and evidence produced in support thereof, had advanced to Worswick the sum of $1,000 without a certificate of work done, for the purpose of enabling said Worswick to carry on his work under the contract, and that it was not true that said contract had been canceled or rescinded. Judgment for the plaintiff in the sum of $5,000 and interest was entered.

The trial court made no special finding as to whether the president of the plaintiff corporation had authority to sign the letter of March 1, 1926, so as to bind the plaintiff, and in the absence of any evidence in the record to overcome the *prima facie* showing of authority in the president (*Grummet* v. *Fresno Glazed Cement Pipe Co.*, 181 Cal. 509 [185 Pac. 388]), we must assume that the court based its finding that the contract was not canceled or rescinded upon its conclusion from the evidence that the letter written to Worswick did not have that effect.

The defendant makes two contentions on this appeal: (1) That the letter of March 1, 1926, to Worswick operated to cancel Worswick's contract and the plaintiff could not thereafter maintain an action for its breach against Worswick or against the defendant as his surety; and (2) that the $1,000

note transaction between Worswick and the plaintiff, without the knowledge or consent of the defendant, exonerated the defendant from any liability under its bond.

There is no dispute with the principle that if the letter to Worswick operated to discharge the contractor from liability under his contract with the plaintiff, the surety also is discharged. But the question presented on this point involves the construction to be placed upon the language appearing in the letter to Worswick, i. e., whether by said letter the plaintiff intended to discharge Worswick from liability on account of his default. ■ Whether a notice is one of rescission, or of termination of further performance amounting to an election to stand on the contract and sue for damages for its breach, has been held to be a matter of intent. (See *Tuso* v. *Green*, 194 Cal. 574, 582 [229 Pac. 327] ; *McNeese* v. *McNeese*, 190 Cal. 402, 405 [213 Pac. 36] ; *Sanborn* v. *Ballanfonte*, 98 Cal. App. 482, 488 [277 Pac. 152].) ■ Looking at the letter to Worswick alone a liberal interpretation would cast at least a doubt as to what the plaintiff intended by the words "terminated and cancelled", which, in the absence of any other evidence of intent, the court may be compelled to resolve in the defendant's favor. But the court would not be justified in ignoring competent evidence which may be said clearly to explain the words used by the plaintiff and to show an intent not to discharge the principal from liability under his contract. The letter to the defendant exhibits clearly the intent on the part of the plaintiff, by reason of Worswick's default, to terminate only his performance, to stand upon its rights under the contract, and itself to complete Worswick's obligation and to charge the liability where it fell under the terms of the contract and the surety bond. The evidence fairly sustains the trial court's conclusion that the letters to Worswick and to the surety did not have the effect of annulling and rescinding Worswick's contract, but that the effect was the same as in the case where the obligee notifies the principal and the surety of the principal's default and of its intent to take over and perform the principal's obligations without releasing any of its rights under the contract and the bond. A notice similar to that involved here was so interpreted in *United States* v. *McMullen*, 222 U. S. 460 [56 L. Ed. 269, 32 Sup. Ct. Rep. 128],

where the distinction between a notice exhibiting an intent to elect to terminate further performance and stand upon the contract, rather than to rescind the contract, was discussed. The fact that the contract there expressly recognized the effect to be given to an annulment as distinguished from a rescission does not vitiate the applicability of the court's reasoning upon which the result reached is based. In that case the stipulation in the contract merely furnished evidence of the intent to be read from the use of the word "annul", while here the evidence of the meaning to be attributed to the words "cancel and terminate", is supplied by the letter to the defendant surety itself, and by the conceded purpose and tenor of the prior negotiations had between and among the obligee, the principal and the surety.

In support of its second contention, the defendant relies upon sections 2819 and 2840 of the Civil Code and authorities which will be discussed. It is urged that the $1,000 advanced by the plaintiff to Worswick before any money was due under the contract was an alteration of the original obligation of the principal by which the surety is exonerated in like manner with a guarantor. It is apparent from the findings that the trial court concluded that the $1,000 received by Worswick was a premature payment under the contract and not a loan transaction outside of the contract, but that nevertheless the plaintiff was entitled to judgment against the defendant surety. We may say that it is conceded by both parties that the findings in this respect are supported by the evidence. In fact we find throughout the record that the plaintiff has at all times insisted that the payment of $1,000 to Worswick, concededly not authorized under the terms of the contract, was on account of payments to become due under the contract, and the plaintiff has based a recovery upon its right to offset that amount against the sums due to the contractor at the time of his default.

The defendant contends that it is established by the authorities cited by it that a premature payment is a material alteration of the contractual obligation which will exonerate the surety without any inquiry into the question whether the surety has been prejudiced thereby. It is the position of the plaintiff that there is authority in point in

this state which establishes that the premature payment will not exonerate the surety if it has not prejudiced its rights.

The case first relied upon by the defendant is *Calvert* v. *London Dock Co.*, 2 Keen, 638 (48 Eng. Rep. Full Reprint, 774), where the contractor abandoned the work and the obligee completed it and sued at law to recover from the contractor and his sureties. The sureties, by a bill in equity, sought to be relieved of liability under their bond on the ground "that the company [the obligee] until the entire performance of the contract, would have retained in their hands, so much of the contract price, as by the contract, they were entitled to retain, as a security for the performance of the rest of the contract; and that by advancing to Streather more than they were bound to do, the company deprived the plaintiffs of the benefit of that security, and thereby, in equity, released them from the bond". It was there said: "The argument however, that the advances beyond the stipulations of the contract were calculated to be beneficial to the sureties, can be of no avail. In almost every case where the surety has been released, either in consequence of the time being given to the principal debtor, or of a compromise being made with him, it has been contended, that what was done was beneficial to the surety—and the answer has always been, that the surety himself was the proper judge of that—and that no arrangement, different from that contained in his contract, is to be forced upon him; and bearing in mind that the surety, if he pays the debt, ought to have the benefit of all the securities possessed by the creditor, the question always is, whether what has been done lessens that security. . . . What the company did, was perhaps calculated to make it easier for Streather to complete the work, if he acted with prudence and good faith; but it also took away that particular sort of pressure, which by the contract, was intended to be applied to him. And the company, instead of keeping themselves in the situation of debtors, having in their hands, one-fourth of the value of the work done, became creditors to a large amount, without any security; and under the circumstances, I think that their situation with respect to Streather, was so far altered, that the sureties must be considered to be discharged from their suretyship."

In *Bragg* v. *Shain*, 49 Cal. 131, it was held that the use of some $5,000, out of a fund to be retained amounting to over $9,000, in paying off liens prior to the time when the obligee was authorized to do so, operated to release the surety, and a judgment against the latter was reversed. In a brief opinion the court expressly followed *Calvert* v. *London Dock Co.*, *supra*, holding that the case before it was not distinguishable in principle from that case and *Taylor* v. *Jeter*, 23 Mo. 244. In the latter case the money required to be retained was paid prematurely directly to the contractor who failed to apply it to lien claims for labor and materials of which the obligee previously had notice. The court there relied on *Calvert* v. *London Dock Co.*, *supra*, in affirming a judgment for the surety on the ground that "the owner having notice of them [the liens], and paying what by the substantial terms of the contract he was entitled to retain until they were removed, voluntarily abandoned an ample fund, which, according to the conditions of the contract, was to accumulate in his own hands as the primary security for its due performance, and in which the surety had an equal interest with himself. He must, therefore, bear the loss occasioned by his own negligence or folly."

The next case cited is *Kiessig* v. *Allspaugh*, 91 Cal. 231 [13 L. R. A. 418, 27 Pac. 655]. There the plaintiff sued to recover the sum of $1800 expended to discharge liens after the full contract price had been paid to the contractors. The court relying on *Bragg* v. *Shain* and *Taylor* v. *Jeter*, *supra*, in reversing the judgment against the surety, stated: "The judgment cannot be sustained upon the facts. The appellant, Lundeen, was a surety, and as money sufficient to satisfy all of the liens mentioned in the complaint was, or ought to have been, in the hands of the plaintiff at the time of his settlement with the contractors, he should have so applied it instead of paying it to the contractors. This balance was to be retained in his hands as an additional security against liens upon the building, and in equity, he held the same also for the benefit of the sureties. It was a special fund to which they had a right to look for their indemnity . . . and the plaintiff was not authorized to surrender it without their knowledge or consent, and having done so, the appellant was discharged."

We are next referred to *Bateman Brothers* v. *Mapel*, 145 Cal. 241 [78 Pac. 734, 736], as the first case, so it is claimed, in which inquiry is made into the question whether the surety was prejudiced by a premature payment. In that case the contract to furnish brick provided that payments were to be made to the contractor of ninety per cent of the value of the materials delivered conditioned that materials are satisfactory to the architects. A special provision permitted the obligees to make payments, if they desire, in advance of deliveries, but it was held that this provision did not waive the requirement of evidence of satisfaction on the part of the architects. The contractor, Mapel, failed to manufacture or deliver any brick, but the plaintiffs had advanced to him money from time to time, aggregating $7,000, to assist him in his experiments to produce a satisfactory product, but his experiments failed. The plaintiffs then purchased the brick in the open market expending in excess of $2,000 over the contract price, and sued the surety. The surety defended on the ground that it was exonerated by the payments to Mapel, and obtained judgment in its favor. This court in that case made a clear distinction between an alteration in the original obligation (sec. 2819, Civ. Code), and an act of the creditor by which the surety is prejudiced. (Subd. 2, sec. 2840, Civ. Code.) The court pointed out that the plaintiffs did not plead the payments to Mapel, nor did they base a recovery upon them; that the payments to Mapel were not made under the contract, but at the utmost, were but transactions outside of the contract to the benefit of both Mapel and his surety, by which the latter was not injuriously affected; and the judgment was reversed. The gratuitous statement is there made that "if a recovery were here sought against the surety because of these advancements he might well be heard to say that he was not responsible therefor, and was exonerated under his bond, because they were not made in accordance with its terms", and "if the recovery were sought for the seven thousand dollars so advanced, the materials for which were not furnished, the surety could rightfully claim his exoneration".

The defendant next refers us to *County of Glenn* v. *Jones*, 146 Cal. 518 [2 Ann. Cas. 764, 80 Pac. 695, 697]. There the surety gave a bond in the sum of $2,500. The plain-

tiff made the first payment of $1860 provided for in the contract, prematurely, before all of the materials had been placed on the grounds as required by the contract. The contractor pocketed the money and abandoned the contract. The plaintiff relet the contract at a sum which was $1,070 in excess of the original contract price, and sued the surety on its bond, and recovered judgment. The judgment was reversed upon the ground that the obligation of the principal by the premature payment had been altered in a material respect without the consent of the sureties. The court relied upon all of the hereinbefore cited cases down to *Bateman Bros.* v. *Mapel, supra*. In answer to the respondent's contention that the sureties could be released only to the extent of the premature payment, it was stated: "We do not think the facts of this case warrant the application of such rule. The contract might have been fully performed by Jones if the plaintiff had not given him money before it was due. After he had received more money than he could possibly have made as profit by continuing his contract, the pressure that should have continued to keep him honest was entirely removed and he was left without compass or rudder to follow his own dishonest inclinations. We think it the better rule in a case like this to hold that the sureties are entirely released. Where plaintiff willfully departed from its contract, and gave the contractor money not due him, and the damages occurred by reason thereof, we do not feel called upon to enter the field of conjecture as to whether or not the loss should be shared by the parties."

The next case relied upon as deeming material the question of prejudice in relation to premature payments is *Russell* v. *Ross*, 157 Cal. 174 [106 Pac. 583]. But it appears that there the trial court instructed the jury that if the plaintiffs had made any payments to the principal Ross prior to the time when they became due under the contract, such payments had the effect of releasing the surety and the latter was entitled to a verdict. The verdict was for the plaintiffs. On the appeal it was held that, as the case had been tried on the theory that any prepayment would have relieved the surety, the implied finding of the jury to the effect that no such prepayment had been made was supported by the evidence. That case, therefore, on the

facts and on principle, is analogous to *Bateman Bros.* v. *Mapel, supra.*

We come now to the case of *Dunne Inv. Co.* v. *Empire State Surety Co.*, 27 Cal. App. 208 [150 Pac. 405, 411, 412], which, without more, may be said to have tended expressly to open up the subject of prejudice to the sureties in connection with premature payments under the contract. There a payment was made in advance of the time when the materials were placed in the building and before the issuance of the required certificate, contrary to the provisions of the contract. Subsequently, however, the materials were placed in the building and the advance payment was deducted from a larger payment then due and the balance paid in accordance with the contract. Relying on *Bateman Bros.* v. *Mapel, supra,* and distinguishing *County of Glenn* v. *Jones, supra,* the District Court of Appeal, after a full discussion, concluded that the surety, not having been prejudiced by the premature payment, was not exonerated. However, on denial of the petition for hearing, this court definitely relegated the case to that class of cases such as *Bateman Bros.* v. *Mapel, supra,* viz., cases where the payment is made *without* the terms of the contract and the original obligation of the principal is not altered. This court stated that where the original obligation was altered ''it is thoroughly settled by our decisions that no inquiry will be allowed as to whether or not the surety was in fact injured thereby'', and that the facts of that case were not such as to bring it within the provisions of section 2819 of the Civil Code, but were to be considered as being affected only by subdivision 2 of section 2840.

The cases of *County of Glenn* v. *Jones, supra,* and *Kiessig* v. *Allspaugh, supra,* were followed in *Silberstein* v. *Kitrick,* 35 Cal. App. 91 [169 Pac. 250], wherein premature payments upon which the plaintiff relied for a recovery were held to exonerate the surety.

In the next case, *Union Oil Co.* v. *Pacific Surety Co.*, 182 Cal. 69 [187 Pac. 14], the construction contract was between the plaintiff oil company and Webber-Duller Co. as the principal. The trial court concluded that the defendant surety was exonerated by payments made by a third company, called the transportation company, but which maintained a close affinity with the oil company, under a loan agreement made

with the contractor, basing its conclusion upon a finding that the loan agreement was a subterfuge and a fraud on the surety for the purpose of covering premature payments under the construction contract. It was held that the finding of fraud and subterfuge was not sustained by the evidence, and that the payments under the loan agreement were not payments under the construction contract, but were simply a transaction outside thereof which did not prejudice the surety, and the judgment in favor of the surety was reversed. This case, therefore, is in line with the cases headed by *Bateman Bros.* v. *Maple, supra.*

We are finally referred to *Mazzera* v. *Ramsey,* 72 Cal. App. 601 [238 Pac. 101, 105], wherein a finding that the payments claimed to have been premature were made with the knowledge and consent and at the instance and request of the sureties, was held to be supported by the record. It is true that the District Court of Appeal there said, ''Even if the premature payments had been pleaded, it would not be a defense, because, under the circumstances stated, the sureties were not prejudiced thereby'', citing *Bateman Bros.* v. *Maple, supra,* and *Dunne Inv. Co.* v. *Empire State Surety Co., supra.* But without reference to the fact that the payment was consented to by one of the sureties, the ''circumstances stated'' referred to the fact that a payment of $400, made in advance of the time when it became due, was in payment of labor and material which were actually furnished and the amount was deducted from a subsequent payment, so that on these facts the case is in effect in line with the cases cited as supporting the quoted statement.

The above *résumé* must make it obvious that the authorities reviewed established the following: (1) That if the premature payment made by the obligee without the knowledge or consent of the surety is one upon which the plaintiff is relying and is dependent for a recovery against the surety, then the payment has materially altered the principal's obligation, the injury to the surety is established, and the surety is exonerated by virtue of the provisions of section 2819 of the Civil Code. (2) If, however, the advance made without such knowledge or consent prior to the time when a payment under the contract is due, is one upon which the plaintiff is not relying nor dependent for a recovery against the surety, it is a payment made without the

terms of the contract and is not an alteration of the obligation of the principal in any respect, and is governed by the provisions of subdivision 2 of section 2840 of the Civil Code, and the surety is exonerated if the payment has injuriously affected its rights. We discover nothing to the contrary in the cases of *Siegel* v. *Hechler & Southwestern Ins. Co.*, 181 Cal. 187 [183 Pac. 664], and *Burr* v. *Gardella*, 53 Cal. App. 377 [200 Pac. 493], as in those cases the facts show that the payments were made within the terms of the contracts.

In the present case, as we have seen, the plaintiff is relying and basing his right to recovery upon the $1,000 payment to Worswick, which the plaintiff contends was made within the contract, and therefore premature, and the trial court so found. Under these circumstances and the law as so established, it must be held that the premature payment altered the obligation of the principal under the contract, and that the surety was exonerated.

The judgment is reversed.